BELDING-HALL MFG. CO. et al. v. MERCER & FERDON LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1909.)

No. 1,974.

1. Sales (§ 201*)—Delivery—Acceptance Otherwise Than as Provided in Contract.

By a written contract plaintiff purchased from defendant all the defendant's cut of hemlock lumber at its mill for the following season at prices specified; the lumber to be piled in a certain manner and delivered on board cars at the station. Plaintiff made an advance payment, as provided for in the contract if it should be required by defendant. After only a small part had been delivered, defendant became financially embarrassed, and by agreement, as there was evidence tending to show, plaintiff accepted delivery of a quantity of the lumber then piled in the millyard to be subsequently measured and graded. The lumber so piled slightly exceeded in value the amount of plaintiff's advances, but by the contract it was entitled to a credit of 60 days after delivery. *Held,* that it was competent for the parties to so modify the contract as to delivery, and that under such agreement the title and right of possession to the lumber so piled vested at once in plaintiff.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529 541; Dec. Dig. § 201.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. BANKRUPTCY** (§ 142*) — PROPERTY VESTING IN TRUSTEE — PREFERENTIAL TRANSFERS.

Property delivered by a bankrupt in good faith within four months prior to the bankruptcy on ·a previous contract of sale does not vest in the trustee, even though the transfer may be voidable as a preference under Bankr. Act July 1, 1898; c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 142.*]

**3. BANKRUPTCY** (§ 268*)—PREFERENCES—RIGHTS OF TRUSTEE.

A trustee in bankruptcy cannot assign to another his right to avoid a preferential transfer of property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. § 268.*]

In Error to the Circuit Court of the United States for the Western District of Michigan.

Action by Mercer & Ferdon Lumber Company against the Belding-Hall Manufacturing Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

This is a writ of error from a judgment in an action of replevin for the recovery of some 800,000 feet of hemlock lumber piled in the yards of the Belding-Hall Company at Ely, Mich. The plaintiff in the action was the Mercer & Ferdon Lumber Company, and the defendants were the Belding-Hall Manufacturing Company. The action was begun in a state court on September 4, 1907, and upon the same day the lumber was seized under a writ of replevin, and, after appraisement, delivered into the possession of the plaintiffs below, the defendants in error here.

This suit was removed by the defendants therein, upon diversity of citizenship, into the court below. On September 5, 1907, certain creditors of the Belding-Hall Company instituted involuntary proceedings in bankruptcy against that company, which resulted in an adjudication and the appointment of a trustee. Under the direction of the bankrupt court, the entire assets of the bankrupt, of every character, were sold en masse to a corporation styled the Assets Realization Company, and the trustee was directed to make conveyance to any person designated by that company. In pursuance of this authority, the trustee conveyed to John W. McKinnon, on January 16, 1908, every interest which the bankrupt had on September 5, 1907, and every right or interest that the trustee had to all such lumber as had been taken under the writ mentioned, and every right and interest which he had under the replevin bond which had been executed. Thereupon the said purchaser, John W. McKinnon, intervened in this suit, and was allowed to become a party and to defend under his claim of title by virtue of this sale by the trustee of the bankrupt.

There was a jury and verdict for the plaintiff below and judgment accordingly. From that judgment this writ has been sued out.

G. E. Nichols, for plaintiffs in error.

P. H. Travis, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge (after stating the facts as above). The plaintiffs' claim of title to the lumber taken under the writ of replevin had its origin in a contract in these words:

"Belding, Michigan, January 8, 1907.

"Mercer & Ferdon Lumber Company, Grand Rapids, Mich.—Gentlemen: Referring to our recent correspondence in regard to lumber, we will sell you

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

our 1907 cut of hemlock lumber at Ely, Mich., upon the following basis: (Then follow prices for different grades and lengths.)

"We guarantee to give you as good a grade as we have formerly made, stock all to be shipped by August 1, 1908, terms sixty days net or two per cent. cash ten days from date of shipment f. o. b. Bogardus, Mich.

"In case we desire, we may require an advance of from $6,000 to $8,000 about the first of August, 1907, but to be optional with you whether or not you give us a note or cash, but we to pay the interest or discount on the advance and you can have the benefit of the 2 per cent. cash discount ten days from the date of shipment.

"In piling this stock, the merchantable piece stock we will pile each length and width separate and the No. 3 boards we pile widths separate. In the merchantable boards, widths to be piled separate and in the No. 2 piece stock widths are to be piled separate, No. 4 boards lengths and widths together.

"Yours truly,                     Belding-Hall Manufacturing Company.
"Dic. by B. F. Hall.

"Accepted. Mercer & Ferdon Lumber Company."

The vendor exercised the privilege of requiring advance payment, as provided, and on July 22, 1907, they received on account of this sale $3,000, and on July 29th a further payment of $5,000. During July they shipped 115,000 feet of the cut lumber, and continued to cut and saw until they had cut some 800,000 feet additional. This somewhat exceeded in value the payments received. Late in August the Belding-Ha Company became financially embarrassed, and sent out a circular letter in these words:

"Belding, Mich., August 28, 1907.

"To the Creditors of the Belding-Hall Mfg. Co.: Owing to the present condition of the money market and our liability to secure immediately sufficient ready money to meet our maturing obligations, it has been thought best, after consultation with the principal creditors, to suspend payment temporarily, at least until a thorough investigation of the company's affairs can be made. Auditors are now at work preparing a statement of the condition of the company which will be sent to you as soon as prepared. In the meantime no preference will be given to any creditor of the company and no new liabilities incurred, except for labor necessary in finishing up goods now in process of construction. The principal creditors comprising over seventy-five per cent. of the indebtedness are favorable to this plan. The company is solvent and can liquidate its indebtedness in full if given a reasonable time.

"Mr. H. H. Hitchcock, vice president of the First National Bank of Chicago; Mr. D. A. Moulton, vice president of the Corn Exchange National Bank of Chicago; and Mr. A. G. Becker of the banking firm of A. G. Becker & Company of Chicago—have consented to act as a creditors' committee and will communicate with you in due season.

"Kindly favor us with your views and suggestions.

"Yours truly,                     Belding-Hall Manufacturing Co.,
                          "By B. F. Hall, Vice President."

A copy of this was received by the defendants in error. They thereupon took steps to save themselves by taking advice of counsel. On the morning of August 30th, Mr. McAllister, attorney at law, acting for the defendants in error, saw Mr. Hall, vice president and principal manager for the Belding-Hall Company, at Belding, where their principal office was located. As a result of the conversation which then occurred Mr. McAllister, together with Mr. Ferdon, of the vendee company, and a Mr. Attwood, a lumber buyer for that company, went to Ely, where the sawmill and lumber yard of the Belding-Hall Company was situated. The evidence in respect of what was said and done upon

the occasion of the meeting of Mr. McAllister and Mr. Hall, and afterwards at the lumber yard of the Belding-Hall Company, at Ely, Mich., is the evidence relied upon to show a change in the contract, whereby the purchaser waived delivery "free on board the cars at Bogardus, Mich.," and agreed to accept delivery in the yard at Ely, and the consent of the seller to such immediate delivery and passage of title on August 31, 1907. We will have more to say about this later.

The undisputed facts to which this evidence had application were these:

First, that the contract was for the sale of "all of our cut 1907 of hemlock lumber at Ely, Mich.," at the prices mentioned.

Second, it was a sale upon credit of 60 days, with a discount of 2 per cent. for cash, with privilege of vendor to require an advance of $8,000, which was in fact made.

Third, the lumber as cut was piled separate from other kinds and each length and width separate, as per the contract.

It must be conceded that although the sale included the entire cut of this particular sort of lumber for the season of 1907, and although there had been a payment made on account of the contract of a sum largely in excess of the lumber which had been shipped and nearly equal to the price of the entire cut up to August 31, 1907, the title to the lumber cut to fill this order had not passed prior to August 31st, because the contract provided for delivery free on board cars at Bogardus, the railway station nearest the mill. If before that had been done bankruptcy had ensued, the title would have passed to the bankrupt's trustee, and the buyers remitted to their rights as creditors by reason of this advance payment. So if the lumber had been seized under execution, the execution creditor would have at law the better claim. So, also, if the lumber had been destroyed by fire or flood, the loss would have fallen upon the vendor.

It follows therefore that, unless there was a change in the contract on August 31st by reason of the occurrences of that day, the plaintiff in the writ of replevin should have failed in his suit, because unable to show title and right of possession.

The construction of the contract and the determination of the matter of when title passed were questions of general law. And so was the question as to whether the parties had changed the contract, so as to pass the title at the yard, without delivery on the cars or preliminary inspection or measurement. The contract made no provision in respect to inspection to determine grade, nor as to measurement. If the parties elected to deliver without inspection or measurement, the title would pass if so accepted. The one essential thing was that the hemlock lumber then cut and piled should be then and there appropriated to this contract. In the absence of conditions to the contrary, the title would pass upon such appropriation subject to grading and measurement later as a preliminary to settlement of the price according to the written agreement. McElwee v. Metropolitan Lumber Co., 69 Fed. 302, 305, 16 C. C. A. 232, 235.

To repeat, the one thing in the way of the passage of the title to the lumber in question, before August 31st, was the obligation of the

Belding-Hall Company to deliver the lumber free on board the cars at Bogardus. This was a clause for the benefit of the buyer alone.

In McElwee v. Metropolitan Lumber Company, cited above, this court said:

"Neither did the provision that the vendor should deliver at Chicago prevent the title from passing before such delivery. Undoubtedly, the general rule is that, if the seller obligates himself as a part of his contract to deliver the property to the buyer at some specified place, title will not pass until such delivery. The Venus, 8 Cranch, 275 [3 L. Ed. 553]; Sneathen v. Grubbs, 88 Pa. 147; Benj. Sales, §§ 325, 377; Com. v. Greenfield, 121 Mass. 40. 'Slight evidence,' says Mr. Benjamin, 'is, however, accepted as sufficient to show that title passes immediately on the sale, though the seller is to make a delivery. The question, at last, is one of intent, to be ascertained by a consideration of all the circumstances.' Benj. Sales, § 329."

In the case at hand, the lumber, which was the subject of this sale, was completely identified. The price had nearly all been paid. To the extent that it had not been paid, the sale was upon an agreed credit of 60 days. An implied lien of the vendor would not prevent passage of title, for such an implied lien only gives the vendor the right to retain possession until the price is paid. See the case cited above. But that right might be waived if there was consent to deliver upon a credit. Selling upon a credit implies that the buyer is to take possession, and that the seller is to rely upon the buyer's promise to pay.

The question as to whether the title passed upon August 31st depended upon whether there was evidence from which the jury might reasonably find that on that day the vendor agreed that the buyer might take possession in the yard and then and there accept delivery. Upon this question there was conflicting evidence.

But there was evidence from which the jury might and did infer that there was then an agreement that the lumber was to be accepted in the yard. That what was said by Mr. Hall, the vice president of the Belding-Hall Company, to Mr. McAllister on August 30th, and by Mr. Duncan on August 31st, induced the tagging of each pile and the immediate counting of the number, lengths, and sizes of the pieces in each pile and the commencement of delivery on cars, is plain. The authority of Mr. Duncan, in view of what was said by Mr. Hall the day before and the powers which he assumed or appeared to exercise as the general manager at the mill and yard, was evidence, in connection with that of Mr. Hall, as to the limitations upon his authority to make or consent to a delivery without a special order from the general office at Belding, to go to the jury upon the question of the effect of his assent to immediate delivery to and acceptance by the buyers. The charge upon this subject was sufficiently plain, viewed as a whole, and the judgment, unless affected by another question, must be affirmed.

The other defense was this: It was and is claimed that a delivery of this lumber under the contract above referred to was a preference under section 60 of the bankrupt law, and that the court erred in not submitting this question, under proper instructions, to the jury. The court denied a number of requests based upon this contention.

A conveyance of property by a bankrupt within four months before bankruptcy, which would be fraudulent at the common law, is a

void conveyance under the sixty-seventh section of the bankrupt law, and the title would vest in the bankrupt's trustee. But it is otherwise. as to a conveyance which is a mere preference under section 60 of the same act, and would be merely voidable at the suit of the trustee. This is not a suit by the trustee, but by an assignee of the trustee. If the delivery was a preference, the trustee only could maintain a suit to avoid it. He may not transfer to another this right of avoidance. Bryan v. Madden, 15 Am. Bankr. Rep. 388, 109 App. Div. 876, 96 N. Y. Supp. 465, has been cited to the contrary. We cannot agree to the conclusion of the Supreme Court of New York. See section 60 of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), and the comment upon it by Mr. Loveland in the third edition of his work upon Bankruptcy (page 472), and seventh edition of Collier upon Bankruptcy (page 672 ct seq.).

Judgment affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes