### In re Stephen L. BARGDILL and Connie S. Bargdill, Debtors.

### Bankruptcy No. 98–31070.

United States Bankruptcy Court, N.D. Ohio.

April 15, 1999.

Thomas Luth, Celina, OH, for debtors.

Bruce C. French, Lima, OH, Chapter 7 Trustee.

Randy L. Reeves, Lima, OH, for Wagner Farms & Sawmill.

Michael A. Staudt, Sidney, OH, for Minster State Bank.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This case comes before the Court upon two separate Motions which the Court, for purposes of resolving common issues, has consolidated. The first Motion is by Minster Bank, a creditor of the above captioned Debtors, to Allow an Amended Proof of Claim. The second Motion was filed by the Trustee in this case and seeks to assign to Minster State Bank the Trustee's Interest in (1) several potential preference actions, and (2) a mortgage due to the Debtors. Wagner Farms & Sawmill, a party in interest, filed objections to both of these Motions. A hearing was subsequently held on these matters at which time all the Parties agreed that the issues presented in the aforesaid mentioned Motions were primarily questions of law. Accordingly, the Parties submitted briefs in support of their respective positions and were given the opportunity to respond to the arguments made by the opposing counsel. The Court has now reviewed these briefs and the arguments and exhibits contained therein, as well as the entire record of the case. Based upon that review, and for the reasons set forth below, the Court DENIES Minster Bank's Motion to Allow an Amended Proof of Claim, but only to the extent of disallowing an amended proof of claim and not to the extent of disallowing Minster Bank a subordinated claim under 11 U.S.C. § 726(a)(3); and the Court DENIES the Trustee's Motion to allow an assignment of the Trustee's Interests, but only to the extent of disallowing the assignment of the Trustee's interest in several potential preference actions.

## FACTS

The facts of this case are straightforward. The Debtors, Stephen and Connie Bargdill (hereinafter Debtors), operated a lumber brokerage company, the business of which was in large part financed by Minster State Bank (hereinafter Bank). However, for reasons not relevant to this proceeding, the Debtors' business failed, and thus on March 17, 1998, the Debtors petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time of the Debtors' Bankruptcy Petition, the Bank was owed the approximate sum of One Hundred Eighty-five Thousand Eight Hundred Ninety-one and 95/100 Dollars ($185,891.95) on two promissory notes which were partially secured by certain real estate owned by the Debtors.

On May 11, 1998, the § 341 meeting of creditors was held at which time Bruce French, the duly appointed Trustee in this case (hereinafter Trustee), was formally notified of the Bank's interest in the secured real estate. Shortly thereafter, asserting a lack of equity in the property, the Bank began consultations with the Trustee and the Debtors' counsel to obtain relief from the automatic stay so as to enable the Bank to effectuate the sale of the secured property. The Bank's efforts eventually culminated in all the interested Parties Stipulating to Relief from the Automatic Stay which was then memorialized in an Order entered by this Court on May 18, 1998. In addition, the Bank, being undersecured on its loan with the Debtors, assisted the Trustee in identifying various business transactions of the Debtors which could potentially yield additional funds for the benefit of the Debtors' bankruptcy estate. Specifically, the Bank alerted the Trustee to several potential preference actions, totaling as much as Seventy Thousand Dollars ($70,000.00), that may have occurred as a result of various prepetition transfers made by the Debtors, including several prepetition transfers made to Wagner Farms and Sawmill (hereinafter Wagner Farms). In addition, the Bank notified the Trustee of a promissory note, secured by mortgage, executed in favor of the Debtors which had an approximate outstanding balance at the time of the

Debtors' bankruptcy petition of Nine Thousand Dollars ($9,000.00).

The assistance provided by the Bank in locating potential funds for the Debtors' bankruptcy estate, at least in part, caused the Trustee to revise his early assessment that the Debtors' bankruptcy estate had no available assets for distribution. (Notice of a "no asset case" was sent to all creditors on March 29, 1998, pursuant to Bankruptcy Rule 2002(e)). Hence, on May 21, 1998, the creditors listed in the Debtors' bankruptcy schedules were formerly sent notice that if they wished to share in any potential distribution from the Debtors' bankruptcy estate that they must submit a formal proof of claim to the Court by August 19, 1998. The Bank, however, through an inadvertent clerical error, failed to submit a formal proof of claim within this deadline. In fact, the only unsecured creditor to file a formal proof of claim within the deadline was Fifth Third Bank, who filed a claim for Three Thousand Eight Hundred Ten and 0²/100 Dollars ($3,810.02) on July 1, 1998.

The Bank became cognizant of its failure to file a proof of claim on October 1, 1998, after discovering that the Trustee was not pursuing any of the potential preference actions disclosed by the Bank because sufficient funds had been available in the Debtors' bankruptcy estate to satisfy the one claim submitted by Fifth Third Bank. However, immediately thereafter, the Bank took immediate steps to rectify its mistake. Specifically, on October 15, 1998, the Bank filed a formal proof of claim along with a Motion to Amend its proof of claim. In addition, the Trustee, having satisfied Fifth Third's claim against the Debtors' bankruptcy estate, agreed to file a Motion to assign to the Bank the Trustee's interests in the potential preference actions and the mortgage due to the Debtors. Wagner Farms then filed objections to both of these Motions.

## LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C § 502. Allowance of claims or interests**

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

**11 U.S.C. § 726 Distribution of property of the estate**

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual

knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection[.]

## DISCUSSION

The allowance or disallowance of claims against the estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B). Thus, this is a core proceeding.

■ One of the fundamental tenants of bankruptcy law is to provide an orderly and equitable distribution of a debtor's bankruptcy estate. *See McCartney v. Integra Nat. Bank North,* 106 F.3d 506 (3d Cir.1997); *Cohen v. Kar Products, Inc. (In re Repair and Maintenance Parts Corp.),* 19 B.R. 575, 576 (Bankr.N.D.Ill.1982). To achieve this end, the Bankruptcy Code requires that any unsecured creditor wishing to receive a distribution from a debtor's bankruptcy estate submit to the court, within a specified period of time, a proof of claim enumerating the amount the creditor is owed from the debtor. In order to further facilitate this process, all proofs of claim are deemed allowed unless an objection is made. 11 U.S.C. § 502(a). However, conversely, a harsh penalty is imposed upon any creditor who fails to submit his or her proof of claim within the time allocated by the Federal Rules of Bankruptcy Procedure. Specifically, the Bankruptcy Code mandates that any delinquently filed claim be either subordinated to a timely filed claim, or the delinquent claim be altogether disallowed. 11 U.S.C. § 726(a); FED.R.BANKR.P. 3002.

In the instant case, there is no dispute that the Bank filed their proof of claim outside the time frame allocated by the Federal Rules of Bankruptcy Procedure.

The Bank, however, argues that the Parties' Stipulated Agreement for Relief from Stay, which was filed with the Court within the time initially allocated by the Court to file a proof of claim, constituted an informal proof of claim to which the Bank's formal amended proof of claim related back. In the alternative, the Bank asserts that its late filed proof of claim should not be disallowed, but instead should simply be subordinated to the only timely proof of claim submitted by Fifth Third Bank. In addition, to collect on its claim, the Bank, anticipating a favorable ruling on the foregoing Motion, asserts that it should be permitted to receive an assignment of both the Trustee's interest in the several potential preference actions against the Debtors' creditors, and the Trustee's interest in a promissory note and mortgage due to the Debtors.

Wagner Farms, however, contends that § 502(b)(9) of the Bankruptcy Code provides for an absolute bar to the allowance of claims which are not timely filed in a Chapter 7 case. In addition, Wagner Farms challenges the authority of the Trustee to assign his interest in any potential preference actions.

### Stipulated Agreement for Relief from Stay as an Informal Proof of Claim

Rule 3002(a) of the Federal Rules of Bankruptcy Procedure mandates that any unsecured creditor wishing to receive a distribution from a debtor's bankruptcy estate must file a timely proof of claim in order for the claim to be allowed. To be considered timely, the proof of claim must be filed with the Court within either 90 days after the date first set for the § 341 meeting of creditors, or if the creditor was originally notified that there were insufficient assets to pay a distribution, as occurred in this case, the creditor has 90 days after notice is sent of a possible distribution to file a proof of claim. FED. R.BANKR.P. 3002(c).

The purpose of requiring a creditor to timely file a proof of claim is to alert the bankruptcy court, trustee, and other creditors, as well as the debtor to the existence of the particular claim so as to facilitate the orderly administration of the bankruptcy case. *In re L. Meyer & Son Seafood Corp.*, 188 B.R. 315 (Bankr. S.D.Fla.1995); *In re Evanston Motor Co., Inc.*, 20 B.R. 550, 551 (Bankr.N.D.Ill.1982), *rev'd on other grounds*, 26 B.R. 998 (N.D.Ill.1983), *aff'd*, 735 F.2d 1029 (7th Cir.1984); *In re Norris Grain Co.*, 81 B.R. 103, 106 (Bankr.N.D.Fla.1987). No particular form, however, is required for a proof of claim. Rather, Bankruptcy Rule 3001 simply prescribes that a proof of claim must be "a written statement setting forth a creditor's claim [and] shall conform substantially to the appropriate official form."[1] In the instant case, however, the Bank never filed within the 90–day time limit imposed by Bankruptcy Rule 3002(c), any statement with the Court even closely comporting with the requirements of Rule 3001. Notwithstanding, the Bank contends that under the Informal Proof of Claim doctrine,[2] the Parties Stipulated Agreement for Relief from Stay, which was filed with the Court within the time allocated by Bankruptcy Rule 3002(c), may be treated as a valid original proof of claim to which the Bank may now seek to amended.

Neither the Bankruptcy Code nor the Bankruptcy Rules mention the informal claim doctrine. In fact, nothing in the Bankruptcy Code or the Bankruptcy Rules specifically allows for the filing of an amended proof of claim, regardless of whether the original proof of claim was properly filed. *In re AM Intern., Inc.*, 67 B.R. 79, 82 (N.D.Ill.1986). However, the informal proof of claim doctrine is a well established judicial principle dating back to the time of the Bankruptcy Act. The essence of the doctrine is to allow a creditor to file a formal amended proof of claim past the time allocated by the Rules of Bankruptcy Procedure, when the creditor originally filed an informal proof of claim within the statutory deadline. Stated in another way; the formal amended proof of claim is given retroactive effect to the date of the timely filed informal proof of claim. The purpose of the doctrine is to alleviate the problems of form over substance by averting the potentially devastating effects the failure to formally comply with the Bankruptcy Rules may cause, when practically speaking a creditor's pleading(s) put all the parties in interest on sufficient and timely notice that a claim was being asserted. *In re WPRV–TV, Inc.* 102 B.R. 234, 238 (Bankr.E.D.Okla.1989).

Nonetheless, not every document filed by a creditor will necessarily constitute an informal proof of claim. Instead, in making a determination of whether an informal proof of claim is valid and therefore amendable, bankruptcy courts have interpreted the Bankruptcy Code and its Rules of Procedure to require the following four elements:[3]

1. The appropriate official form is Official Form 10.

2. The whole term informal proof of claim is actually a misnomer as it implies that the creditor was attempting to file in some manner a proof of claim. Nothing, however, could be further from the truth. Instead the very nature of an informal proof of claim is that it was unplanned. *In re Dietz*, 136 B.R. 459, 464 (Bankr.E.D.Mich.1992). In other words, the pleading purporting to be the informal proof of claim was filed by a creditor for a reason(s) other than to establish a claim against the debtor's bankruptcy estate. For example, the following documents have all been found to be informal proofs of claim: (1) an objection to confirmation of a debtor's chapter 13 plan; (2) a cross-complaint seeking relief from the automatic stay; (3) a complaint objecting to discharge; (4) a disclosure statement filed by a creditor in support of its plan; (5) a motion for a valuation hearing under § 506; (6) a complaint initiating an adversary proceeding; (7) a motion to set aside an order; and (8) a motion for relief from stay. 9 Collier on Bankruptcy ¶ 3001.05[1] (15th Ed.1998).

3. A variation on this test was set out in *In re Charter Co.*, 876 F.2d 861, 863 (11th Cir.1989) which held that an informal proof of claim would be allowed when the document apprised the court to the existence, nature, and

1) the proof of claim must be in writing;

2) the writing must contain a demand by the creditor on the debtor's bankruptcy estate;

3) the informal proof of claim must be timely filed with the Bankruptcy Court;

4) the writing must express an intent to hold the debtor liable for the debt.

*In re McCoy Management Serv.*, 44 B.R. 215, 217–18 (Bankr.W.D.Ky.1984); *In re Litamar*, 198 B.R. 251, 255 (Bankr. N.D.Ohio 1994); *In re Scholz*, 57 B.R. 259, 261 (Bankr.N.D.Ohio 1986); *see also Official Comm. Of Tort Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 142 F.3d 433, 1998 WL 180594 (6th Cir. 1998) (citing with approval the foregoing test).[4] In addition, as the informal proof of claim doctrine is a judicially created principle, the allowance or disallowance of an informal proof of claim must be based on sound equitable considerations. *See, e.g., Houbigant v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr.S.D.N.Y.1995); *In re Plunkett*, 191 B.R. 768, 774 (Bankr.D.Wis.1995).

In the case sub judice, it is clear to the Court that the Bank satisfies the first three elements of the foregoing test. For example, there is no question that the Bank's Stipulated Agreement for Relief from Stay was a written demand upon the Debtor's bankruptcy estate which was timely filed with this Court. In addition, equitable considerations lean toward applying the informal proof of claim doctrine given the fact that the Bank actively participated in the Debtors' bankruptcy case, and only through inadvertence did the Bank fail to file a formal proof of claim. However, the fourth and final element of

the informal proof of claims test presents a different problem.

■■■ The fourth element of the informal proof of claim doctrine requires that the document purporting to be the informal proof of claim exhibit an intent on the part of the creditor to hold the debtor liable for the debt. In undertaking this analysis, the primary consideration, given the notice function of a proof of claim, is to determine whether the document purporting to be the informal proof of claim would give a reasonable party notice of the creditor's intent to assert a claim. *See In re Haugen Constr. Servs., Inc.*, 88 B.R. 214, 217 (Bankr.D.N.D.1988). In making this determination, a court should look to the document as a whole; however, no particular form or wording in the document is necessary. For example, the intent to hold the debtor liable may be implicit in the document, and in appropriate circumstances extraneous documents may even be consulted to determine the creditor's intent. *Gaudio v. Stamford Color Photo (In re Stamford Color Photo)*, 105 B.R. 204, 207 (Bankr.D.Conn.1989); *In re Joiner*, 93 B.R. 130, 131–34 (Bankr.N.D.Ohio 1988).

■■■ Applying these considerations to the case sub judice, the Court is unable to conclude that the Bank, through its Stipulated Agreement for Relief from Stay, gave reasonable notice of its intent to assert a claim against the Debtor's bankruptcy estate. Specifically, the Court notes that absolutely nowhere in the Parties' Agreement for Relief from Stay is the unsecured portion of the Bank's claim even mentioned.[5] In fact, the only language in

---

amount of the claim (if ascertainable), and made clear the claimant's intention to hold the debtor liable for the claim.

**4.** The Bankruptcy Appellate Panel for the Sixth Circuit has held that unpublished decisions of the Sixth Circuit are not binding, but may be cited as persuasive authority if no published decision will serve as well. *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 201 (6th Cir. BAP 1998).

**5.** It is normal practice in this Court for a creditor seeking relief from the automatic stay to attach to their motion a worksheet listing the secured and unsecured portions of their debt. However, as the Bank's relief from Stay was done per Stipulated Agreement, no such worksheet was attached.

the Parties' Stipulated Agreement which could even be construed as establishing an unsecured claim against the Debtors' bankruptcy estate is the portion of the Agreement which states, "[t]he debtors do not have any equity in the collateral referred to in this motion in that the amount of the indebtedness owed on the collateral exceeds the value of the collateral subject to [sic] security interest." However, this language is simply insufficient to constitute reasonable notice to third parties of the Bank's intent to assert a claim. For example, not every undersecured creditor who seeks relief from the Automatic Stay necessarily asserts a claim on the unsecured portion of their debt. In fact, many undersecured creditors are simply content to have their collateral returned without making any further demands on the bankruptcy estate. In addition, the Court notes that the Bank did not take any action to hold a valuation hearing to determine the allowed amount of their secured and unsecured claim pursuant to 11 U.S.C. § 506(a) and FED.R.BANKR.P. 3012. *See also In re Mitchell,* 82 B.R. 583, 586 (Bankr.W.D.Okla.1988). Accordingly, based upon the foregoing considerations, the Court holds that the fourth element of the foregoing test is not met, and thus the informal claim doctrine is not applicable in this case.

### Allowance of Tardily Filed Claims

██ The Bank, however, asserts that even if the informal proof of claim doctrine is not applicable under these particular circumstances, the Court should still allow, for distribution purposes, the Bank's tardily filed formal proof of claim. The Court agrees.

Section § 726(a) of the United States Bankruptcy Code, which sets forth the priority for the distribution of claims in a Chapter 7 case, expressly allows for the payment of tardily filed claims. *In re Mid–Miami Diagnostics, L.L.P.,* 195 B.R. 20, 22 (Bankr.S.D.N.Y.1996); *Reitmeyer v. Kirkpatrick & Lockhart, LLP (In re American Metallurgical Prod. Co., Inc.),* 228 B.R. 146, 154 (Bankr.W.D.Pa.1998). Specifically, § 726(a)(3) states that property of the bankruptcy estate may be distributed "in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a)...." Nonetheless, Wagner Farms asserts that despite § 726(a)'s specific allowance of tardily filed claims, such claims are actually disallowed pursuant to § 502(b)(9). However, the Court finds that such an assertion is unfounded.

Section 502(b)(9) of the Bankruptcy Code provides that tardily filed claims are disallowed if an objection to the proof of claim is filed *"except to the extent [that such a claim is] permitted under paragraph (1), (2), or (3) of section 726(a)...."* Thus, by explicit reference, § 502(b)(9) specifically allows for the payment of tardily filed claims that fall under § 726(a)(3). In fact, contrary to Wagner Farms' assertion, the legislative history of § 502(b)(9) does not indicate that this section, which was added as a part of the Bankruptcy Reform Act of 1994, was intended to entirely disallow tardily filed claims in a Chapter 7 case. Rather, the legislative history of § 502(b)(9) only indicates that it was intended to overrule cases such as *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn.1992), which involved the allowance of tardily filed claims in a Chapter 13 reorganization case. However, in reorganization cases there are strong policy reasons to entirely disallow late filed claims. For example, of paramount importance in a reorganization case is the need of the debtor to know with certainty the amount and number of the allowed claims in order for the debtor to formulate a feasible plan of reorganization. On the other hand, the policy reasons to disallow tardily filed claims in a Chapter 7 liquidation case are much weaker when the balance of any unclaimed funds are simply paid to the debtor. 11 U.S.C. § 726(6); *see Gullatt v. United States (In re Gullatt),* 169 B.R. 385 (M.D.Tenn.1994).

■ The Court does agree with Wagner Farms that to allow the payment of tardily filed claims does seem to conflict with Bankruptcy Rule 3002(c) which holds that, with some exceptions, proofs of claim in Chapter 7, 12, and 13 cases must be filed within 90 days after the date first set for the section 341 meeting of creditors. 4 Collier on Bankruptcy ¶ 502.03[10][c] (15th Ed.1998); *see also discussion, supra.* However, to the extent that a Bankruptcy Rule conflicts with a Bankruptcy Code provision, it cannot stand. *United States v. Chavis (In re Chavis),* 47 F.3d 818, 822 (6th Cir.1995) *quoting (United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2nd Cir.1994)); *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087 (6th Cir.1990). In addition, any actual conflict between the Bankruptcy Code and Bankruptcy Rule 3002(c) is actually illusory as the 1996 Advisory Committee Notes to Bankruptcy Rule 3002 specifically state:

> [t]he Reform Act amended § 726(a)(1) and added § 502(b)(9) to the Code to govern the effects of a tardily filed claim. Under § 502(b)(9), a tardily filed claim must be disallowed if an objection to the proof of claim is filed, except to the extent that a holder of a tardily filed claim is entitled to distribution under § 726(a)(1), (2), or (3).

> The phrase 'in accordance with this rule' is deleted from Rule 3002(a) to clarify that the effect of filing a proof of claim after the expiration of the time prescribed in Rule 3002(c) is governed by § 502(b)(9) of the Code, rather than by this rule.

However, even though the Bankruptcy Code specifically permits tardily filed claims to receive a distribution, there is no assurance, even if funds are available in a debtor's bankruptcy estate, that such a creditor will actually receive any distribution as § 726 provides that claims from the estate are to be paid in the following order: First, payment is to go to those creditors entitled to priority under § 507 (i.e., creditors have claims for wages, taxes, alimony, etc. ...). Second, after paying the priority claims in full, payment is to go on a pro-rata basis to those allowed unsecured creditors who timely file their proofs of claim, or to those unsecured creditors who tardily file their proofs of claim, but who did not have notice or actual knowledge of the debtor's bankruptcy petition in time to file a proof of claim. §§ 726(a)(1), (2), (A), (B), (C). Finally, if there are any remaining funds available for distribution, those creditors, such as the Bank, who tardily file their claims, and who had notice or actual knowledge of the debtor's bankruptcy, are entitled to receive a distribution. § 726(a)(3). Of course, it will be a rare situation that such a creditor actually receives any remuneration as rarely are sufficient funds even available to pay in full the first two levels of creditors. Notwithstanding, the Bank asserts that despite its low relegation on the distribution ladder, it will still in all likelihood receive a disbursement from the Debtor's bankruptcy estate given the fact that, (1) potentially large assets are still available for recovery from the Debtor's bankruptcy estate, and (2) no other creditor, besides Fifth Third Bank, has made a claim upon the Debtors' bankruptcy estate.

### Trustee's Power to Assign Interests in Bankruptcy Estate

■ In recognition of the large assets that may still be available for distribution from the Debtors' bankruptcy estate, the Bank seeks from the Trustee the assignment of several potential preference actions and a mortgage due to the Debtors. Wagner Farms, a creditor against whom a preference action may be asserted, objects to the assignment of the potential preference actions on the grounds that the Trustee has no authority to assign preference actions to creditors.

In a bankruptcy proceeding, the resolution of any dispute between two parties necessarily begins by first examining the pertinent language of the Bankruptcy Code. *Vergos v. Gregg's Enterprises, Inc.,* 159 F.3d 989, 990 (6th Cir.1998) citing

*Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995). In this case, § 547(b) is the relevant statutory section and provides, in pertinent part, that "[e]xcept as provided in subsection (c) of this section, the *trustee* may avoid any transfer of an interest of the debtor in property...."

■ Upon a close examination of this statutory section it is clear to the Court that the only person explicitly authorized by the Bankruptcy Code to pursue a preference action is the bankruptcy trustee.[6] *But see* 11 U.S.C. § 522(h). Thus, given the direct limitation imposed by § 547(b), the Court will not permit other parties to exercise the trustee's power to avoid preferential transfers, unless such an interpretation would go clearly contrary to the public policies underlying the Bankruptcy Code. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

■ In a bankruptcy proceeding, preference actions are designed to accomplish two public policy goals. The first goal is to further the important bankruptcy policy of ensuring that all creditors within the same class receive the same pro-rata share of a debtor's limited assets, and the second policy goal is to reduce the incentive of creditors to rush and dismember a financially unstable debtor by allowing a bankruptcy trustee to recoup last-minute payments made to creditors. *Matter of Smith*, 966 F.2d 1527, 1535 (7th Cir.1992), *certiorari dismissed* 506 U.S. 1030, 113 S.Ct. 683, 121 L.Ed.2d 604. Examining these two policy goals together, the Court

can in no way conclude that such objectives are in any way hindered by limiting the Bankruptcy Code's avoiding powers to solely the bankruptcy trustee. In fact to the contrary, the Court can conceive of legitimate public policy reasons of limiting the trustee's avoiding powers to solely the trustee. Specifically, this Court is cognizant of the fact that many creditors feel defrauded, in a preference action, by having to return to the bankruptcy estate the receipt of an otherwise lawful payment. However, this belief is certainly tempered by the fact that the party bringing the preference action is a neutral party specifically designated by law to act impartially on behalf of a debtor's bankruptcy estate, and not simply another creditor who may possibly have ulterior motives for pursuing the preference action. *See, e.g., In re Pearson Indus., Inc.*, 178 B.R. 753, 760–61 (Bankr.C.D.Ill.1995). Thus, in view of maintaining the high integrity of the bankruptcy system, this Court will not suppose that Congress intended that other parties exercise, via an assignment, the bankruptcy trustee's avoiding powers under § 547(b).[7]

■ Supporting this position, is the overwhelming majority of case law which has reached an identical result. *Belding–Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.*, 175 F. 335, 339–40 (6th Cir.1909) ("If the delivery was a preference, the trustee only could maintain a suit to avoid it. He may not transfer to another this right of avoidance"); *Webster v. Barnes Banking Co.*, 113 F.2d 1003, 1005 (10th Cir.1940); *Grass v. Osborn*, 39 F.2d 461, 461 (9th Cir.1930) (the trustee in bankruptcy could not sell his right to set aside a preferential transfer); *Texas Consumer Fin. Corp. v. First Nat'l City Bank*, 365 F.Supp. 427, 430 (S.D.N.Y.1973) (a debtor in possession

---

6. In a Chapter 11 case this would normally be the Debtor–in–Possession. 11 U.S.C. § 1107(a).

7. A prohibition on an assignment of a Trustee's right to pursue a preference action should not be confused with a delegation of

such a duty. The delegation of a Chapter 7 trustee's duties in some instances is essential to the efficient administration of a bankruptcy case, and is specifically contemplated by § 327 of the Bankruptcy Code.

"may not assign his claim" to avoid a preference); *Klein v. Leader Elec. Corp.*, 81 F.Supp. 624, 626 (N.D.Ill.1948) ("The only right to set aside a preference resides in the Trustee . . . and not in the creditors by way of subrogation or any other means"); *United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.)*, 11 B.R. 930, 937 (Bankr.E.D.N.Y.1981) (recognizing "the well-settled principle that neither a trustee in bankruptcy, nor a debtor in possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference"); *Churchfield Management & Inv. Corp.*, 122 B.R. 76, 81 (Bankr.N.D.Ill.1990). *But see Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1324 (10th Cir.1989) (representative of the estate appointed in a reorganization plan pursuant to § 1123(b)(3)(B) was validly assigned right to avoid a preference). Accordingly, based upon the foregoing analysis, the Court will not permit the Trustee to assign his interest in several preference actions to the Bank. The Court, however, does not reach the same result with regards to the Trustee's assignment of the mortgage due to the Debtors as no objection was made to such an assignment and the policy reasons against such an assignment are not nearly as great (i.e., it is normal business intercourse to assign notes and mortgages from one creditor to another). *See also* 11 U.S.C. § 365(f).

In conclusion, based upon the lack of notice provided by the Bank's Stipulated Agreement for Relief from Stay, the Court finds that the Agreement does not qualify as an informal proof of claim to which the Bank could seek to amend. However, the formal proof of claim filed by the Bank outside the time limits imposed by Bankruptcy Rule 3002(c) will be allowed as a tardily filed claim pursuant to 11 U.S.C. §§ 502(b)(9) and 726(a)(3). In addition, based upon the language of 11 U.S.C. § 547(b), the Trustee may not assign his interest in any potential preference actions that he may have on behalf of the Debtors' bankruptcy estate. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that Minster State Bank's Motion to Allow an Amended Proof of Claim be, and is hereby, DENIED, but that Minster State Bank's proof of claim, filed on October 15, 1998, against the Debtors, Stephen L. Bargdill and Connie S. Bargdill, be allowed as a tardily filed claim under 11 U.S.C. § 726(a)(3).

It is **FURTHER ORDERED** the Trustee's Motion to Assign his Interest in Several Potential Preference Actions to Minster State Bank be, and is hereby, DENIED, but that the Trustee be permitted to assign his interest in a Second Mortgage due to the Debtors, Stephen L. Bargdill and Connie S. Bargdill.