**In re Joseph A. CARRAGHER, Jr., Paulette N. Carragher, Debtors.**

No. 97–74571.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 14, 2000.

Alan I. Seitman, Atlanta, GA, for debtor.

James R. Marshall, Atlanta, GA, for The Harmans.

Robert Trauner, Trauner, Cohen & Thomas, Atlanta, GA, Chapter 7 Trustee.

William L. Rothschild, Byrne, Moore & Davis, Atlanta, GA, for Chapter 7 Trustee.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This Chapter 7 case is before the Court on the "Trustee's Motion to Sell Certain Estate Property Including Settlement of Certain Estate Claims." The Trustee seeks to sell and/or settle four categories of claims to or with Dale and Katherine Harman. The initial motion sought to settle and sell these claims for $1,000.00. At the hearing on the motion held on February 23, 2000, the Harmans increased their offer to $10,000.00. Prior to the hearing, both the debtors and the law firm of Raiford, Dixon, & Thackston, LLP, (hereinafter "Raiford, Dixon"), a creditor in this case and counsel for the debtor Paulette Carragher in litigation pending in the Fulton Superior Court, filed objections to the Trustee's motion. At the February 23, 2000 hearing, a number of questions were raised regarding what precisely the Trustee was proposing to sell and/or settle and how the sale or settlement would affect litigation in Fulton County between the debtors and the Harmans and the adversary proceeding filed by Mrs. Harman against Mrs. Carragher in this Court.

Following the February 23, 2000 hearing, the Trustee's counsel wrote a letter to the Court dated March 2, 2000, which was filed on March 6, 2000. Raiford, Dixon wrote a letter to the Court on March 7, 2000, which letter was filed March 8, 2000. The Harmans filed a pleading entitled "Offer to Purchase Assets of the Estate" on March 10, 2000. Raiford, Dixon then filed a response to the Harmans' Offer on March 14, 2000. The debtors filed a supplemental brief objecting to the Trustee's Motion and a response to the debtors' offer to purchase assets on March 14, 2000. On March 20, 2000, the Trustee filed a further response to the debtor's supplemental brief and the creditor's response. Finally, on March 22, 2000, the debtors filed a reply. After carefully reviewing all of the letters, responses and pleadings filed by all of the parties, the Court concludes that the Trustee's motion should be denied.

Some background is helpful before considering the Trustee's motion. The debtor Mrs. Carragher and Mrs. Harman have been litigating with one another since 1990 in a case still pending in the Superior Court of Fulton County. This litigation is described in some detail in a lengthy Or-

der entered by the Bankruptcy Court on February 24, 1999, in the adversary proceeding *Katherine Ross Harman v. Paulette N. Carragher, Paulette Carragher Interiors, Inc.*, Adversary Proceeding No. 98–6196. In the adversary proceeding filed in the Bankruptcy Court, Mrs. Harman has objected to Mrs. Carragher's discharge and to the dischargeability of the debt to Mrs. Harman. In this Court's February 24, 1999 Order, the Court lifted the automatic stay to allow the parties to conclude the Fulton County litigation and to try Mrs. Harman's claims against Paulette Carragher in the Superior Court of Fulton County. The Order provided, in pertinent part:

> If the Superior Court allows plaintiff to amend her claims to include claims based on fraud or willful and malicious injuries and if plaintiff obtains a judgment with findings or special interrogatories showing that the judgment is based on such claims, then the doctrine of collateral estoppel would apply and the claim would survive this bankruptcy pursuant to § 523(a)(6).... If the claim is determined to arise only out of a breach of contract, then the parties would need to proceed here in Bankruptcy Court on the § 727 claims objecting to the debtors' discharge.

Counsel were directed to proceed with the Fulton County litigation and to file a status report with the Bankruptcy Court every four months. Counsel for Mrs. Harman has recently reported that he expects the case to be set for trial in the Superior Court on the next available trial calendar.

The Harmans state that they are offering to purchase the following claims for $10,000.00 from the Trustee in bankruptcy:

(1) the estate's claims, if any, to ownership, and to the avoidance of any claims of security interest in, personalty that has been carried on the books of Paulette Carragher Interiors, Inc. ("PCI");

(2) the stock of PCI;

(3) the third party claim asserted by Mrs. Carragher against C. Dale Harman; and

(4) the counterclaim asserted by Mrs. Carragher against Katherine Ross Harman.

■ The third and fourth items which the Harmans proposed to "purchase" actually amount to a settlement of claims asserted against the Harmans by Mrs. Carragher in the Fulton County litigation. The standard for approving or disapproving a proposed settlement is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). When deciding whether to approve or disapprove a proposed settlement, the Bankruptcy Court must consider (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay; and (4) a deference to the reasonable views of creditors.

■ In determining the probability of success in the litigation, the Court does not have to decide the merits of the claim, but only has to consider the probability of succeeding on a claim. "To make an informed and independent judgment ... the Court needs facts, not allegations." *In re Cotton*, 127 B.R. 287 (Bankr.M.D.Ga.1991), *aff'd sub nom. Cotton v. Banksouth, N.A. (In re Cotton)*, 136 B.R. 888 (M.D.Ga. 1992), *rev'd on other grounds*, 992 F.2d 311 (11th Cir.1993) (quoting *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 437, 88 S.Ct. 1157, 1170, 20 L.Ed.2d 1 (1968)). The record does not contain sufficient facts for the Court to make an informed and independent judgment on the probability of success on the debtor's counterclaim against Mrs. Harman, or on the third party claim against Mr. Harman. The Trustee points to the fact that a jury in 1992 found in favor of the Harmans on these claims. However, that verdict was overturned by the Georgia Court of Appeals.

The Court cannot give any meaningful weight to an overturned jury verdict. The claims themselves have not been explained or valued by the Trustee. In the Harmans' offer filed on March 10, 2000, they state that they have attached copies of the original and amended third party claims and the original counterclaim as Exhibits A, B and C, but no exhibits were attached to the pleadings filed. Furthermore, debtors argue that the Harmans' claims and defenses in Fulton County are inconsistent with statements made by the Harmans in the Bankruptcy Court about said claims and defenses, specifically with reference to claims for fees and expenses in what the parties have referred to as the *Lacey–Champion* litigation. Neither the Harmans nor the Trustee have responded to this argument. The Trustee and the Harmans have also not presented any facts or arguments relating to the other three prongs of the *Justice Oaks* standard for approving a settlement. Accordingly, the Court concludes that under the current record, the Trustee has not made the necessary showing under *Justice Oaks* to obtain approval of a settlement of the debtors' third party claim and counterclaim pending in Fulton County.

 The Trustee's motion to sell "the estates' claims, if any, to ownership and to the avoidance of any claims of security interest in, personalty carried on the books of PCI" must also be denied. The Trustee wants to sell the estate's rights to avoid Raiford, Dixon's security interest in property of PCI. The Harmans state in their offer that they believe the security interest held by Raiford, Dixon is "more susceptible to attack as a preference or fraudulent conveyance than does the Trustee." They say that this dispute will take place outside the Bankruptcy Court, between parties who are not debtors to the case and that it will not affect property of the estate. This sale cannot be allowed, as a trustee cannot sell a preference or fraudulent conveyance claim. Absent extraordinary circumstances, a trustee is prohibited from selling, transferring, or assigning the right to assert and maintain an estate's avoidance action to an individual creditor. *In re Bargdill,* 238 B.R. 711, 721–22 (Bankr. N.D.Ohio 1999); *McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.),* 210 B.R. 27, 32 (N.D.N.Y.1997), *aff'd,* 142 F.3d 571 (2nd Cir.1998) ("[I]t is a also a well settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference.") (Citations omitted); *Also see Louisiana State School Lunch Employees Retirement System v. Legel, Braswell Gov't Securities Corp.,* 699 F.2d 512, 515 (11th Cir.1983); *Belding–Hall Mfg. Co., et al. v. Mercer & Ferdon Lumber,* 175 F. 335, 340 (6th Cir.1909); *The Unsecured Noteholders' Comm. v. First Nat'l Bank and Trust Co. of Oklahoma City (In re Amarex, Inc.),* 36 B.R. 59, 61–62 (Bankr.W.D.Okla.1984).

 Extraordinary circumstances must be present before a court will allow a creditor to act in lieu of a trustee. The Court in *Spring Service Texas, Inc. v. J.R. McConnell (In re McConnell),* 122 B.R. 41, 44 (Bankr.S.D.Tex.1989), set out the necessary conditions for permitting a creditor to bring an avoidance action. The claim must be colorable, the intervention must be brought on behalf of the estate, and the trustee or debtor-in-possession must have unjustifiably refused to bring suit or abused his discretion in not acting. Neither the Harmans nor the Trustee has established any of these conditions. There is no suggestion that any claim is colorable. At the hearing held on February 23, 2000, counsel for the Trustee discussed his investigation of the validity of the Raiford, Dixon security interest, and stated as follows:

> The trustee came to the conclusion it's a good security interest. It was an antecedent debt. It may not even have been a debt of the corporation. But as the owner of the stock of the corporation, the trustee came to the conclusion that

this is not the fight to fight. There's no argument that Mr. Dixon's law firm did work for somebody. It is a secured creditor.

(Tr. at 19, lines 13–19). The Harmans have also stated that any action they would bring would be in state court, and there is no indication that this action would be brought on behalf of the estate. Finally, there is no indication that the Trustee has acted unreasonably or abused his discretion in not seeking to set aside the Raiford, Dixon security interest.

■ The last item the Trustee seeks to sell is the stock of PCI. This proposal will require clarification from the parties. First, the Harmans offered a lump sum, $10,000.00, for all four categories of claims or interests. The Court has declined to approve the Trustee's settlement or sale of the other three categories of claims, and it is not clear what, if anything, is being offered by the Harmans for the stock of PCI.

Second, the Carraghers have strongly objected to the Harmans owning a business with Paulette Carragher's name in it. Mrs. Harman and Mrs. Carragher are apparently competitors in the interior decorating business, and Mrs. Carragher is concerned that damage to her reputation could result from this sale. The Harmans state in their offer that "the Trustee is invited to change the name to one that is acceptable to all the parties." However, the parties have not advised the Court of any manner of proceeding "that is acceptable to all the parties."

The Harmans state that they want to buy the stock of PCI so they can take possession of the inventory, try to invalidate the Raiford, Dixon security interest, liquidate the inventory and then pay the creditors of PCI. They state that if they are not successful in invalidating the security interest, then they would sell the inventory and pay Raiford, Dixon and other creditors of PCI. The Harmans in essence object to the Carraghers' continued possession of property that is not exempt and not property of the estate. They question why the secured lender Raiford, Dixon has not repossessed the collateral. Raiford, Dixon does not answer this question, but objects to any sale of the stock of PCI, arguing that it is being used as a "subterfuge" for giving the Harmans some claim against the Raiford, Dixon law firm which might then result in that law firm's disqualification in representing the Carraghers in the Fulton County litigation. The Harmans have not addressed this argument, but it is not clear how a sale of the stock of PCI could lead to Raiford, Dixon's disqualification. On the other hand, it is not apparent how the owner of PCI could attack the Raiford, Dixon lien. As stated previously, counsel for the Trustee concluded that Raiford, Dixon's security interest is a good security interest. Counsel advised the Court at the hearing on February 23, 2000 that he has found no possible theory to attack the security interest. It would be useful here if the Harmans could articulate their theory for attacking the Raiford, Dixon security interest, and it would be useful if Raiford, Dixon could explain why they have chosen to permit the Carraghers to remain in possession of the collateral. In short, there are too many unanswered questions regarding the Trustee's proposed sale of the stock of PCI, and the sale cannot be approved on the current record.

In accordance with the above reasoning, the Trustee's motion to sell certain estate property and settle certain estate claims is hereby denied.