**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

**No. 02–50557–JWV.**

United States Bankruptcy Court,
W.D. Missouri.

March 24, 2004.

Cassandra L. Writz, Cynthia Dillard Parres, Laurence M. Frazen, Mark G. Stingley, Michelle M. Masoner, Robert M. Thompson, Staci O. Schorgl, Tammee E. McVey, William Jeffrey Maloney, Bryan Cave LLP, Michael D. Hockley, Spencer Fane Britt & Browne, Kansas City, MO, Thomas R. Graham, King & Spalding LLP, Washington, DC, for Debtors.

### MEMORANDUM OPINION

JERRY W. VENTERS, Chief Judge.

The issue presently before the Court in this Chapter 11 case is whether the Court should give effect to pre-petition arbitration agreements and lift the automatic stay to allow the arbitration of certain claims to proceed.

Black & Veatch Prichard, Inc. ("Black & Veatch") filed a proof of claim for $28,572,482 relating to the alleged breach of three contracts having to do with the engineering and construction of a portion of a refinery and fertilizer plant in Coffeyville, Kansas. Farmland Industries, Inc., et al., the Debtors in these proceedings, and the Official Committee of Bondholders (collectively, the "Debtor") joined in an objection to the proof of claim, asserting numerous substantive grounds for disallowance. Black & Veatch denied the Debtor's allegations, argued its claim on the merits, and requested that this Court grant Black & Veatch's motion for relief from the automatic stay to allow the parties to arbitrate their disputes pursuant to their pre-petition arbitration agreements. The Debtor asks that the Court deny Black & Veatch's request for arbitration inasmuch as the Debtor's objection to Black & Veatch's proof of claim is a core proceeding, the resolution of which concerns the underlying policies and purposes of the Bankruptcy Code.

The Court held a hearing on the Debtor's objection to Black & Veatch's proof of claim on February 9, 2004, in Kansas City, Missouri. At the same time, the Court set a briefing schedule for Black & Veatch's motion requesting relief from the automatic stay, and took both matters under advisement.[1] After reviewing the arguments of the parties, and after conducting its own research, the Court is prepared to lift the automatic stay to allow the parties' dispute to be resolved pursuant to their pre-petition arbitration agreements.

### I. BACKGROUND

By the end of December 1997, the Debtor and Black & Veatch had entered into

---

**1.** The evidentiary hearing on Black & Veatch's motion requesting relief from the automatic stay and the Debtor's objection thereto was cancelled and the matter was submitted on the pleadings. (Document No. 8099). The Debtor also stated that it had claims against Black & Veatch in excess of $32,000,000. Those claims are not presently before the Court.

three contracts to engineer, procure, and construct two components of a total petroleum coke-to-fertilizer project in Coffeyville, Kansas. The parties executed an agreement for engineering services ("Engineering Agreement"), a lump sum agreement for the Coffeyville Gasification Plant ("Gasification Agreement"), and a lump sum agreement for the Coffeyville ammonia synthesis loop project ("Synloop Agreement"). Black & Veatch stated that the value of the three contracts exceeded $180,000,000. According to Black & Veatch, the entire design-build project was based on a process information package ("PIP") owned by Texaco and licensed to the Debtor. Many of the component parts were being designed by Texaco, while others were being recycled from a plant in Daggett, California.

The Engineering Agreement preceded both the Gasification and Synloop Agreements. The purpose of the Engineering Agreement was to provide a definitive cost estimate for the gasification project, a service that cost the Debtor $935,000.00. The Debtor intended to use the conclusions of the Engineering Agreement as a basis for soliciting bids for the construction of the gasification plant. Ultimately, the Debtor accepted the bid of Black & Veatch, which was based on the design specifications Black & Veatch itself had created. Black & Veatch's conclusions in the Engineering Agreement were based, in part, on the cost of relocating components of the Daggett, California plant to Coffeyville, Kansas, and on employing Texaco's proprietary technology under the PIP at the Coffeyville facility. Black & Veatch asserts that the Engineering Agreement was never intended to be a check against Texaco's engineering or the Debtor's overall project design and feasibility; those were to be determined by Texaco, the Debtor, and the Debtor's secured lender.

The Gasification Agreement provided that Black & Veatch was to engineer, procure, and construct the gasification plant within twenty-two months, for the sum of $145,820,500. The Debtor issued a notice to proceed to Black & Veatch on December 12, 1997. Mechanical completion was due no later than October 11, 1999.

Black & Veatch argues that the Gasification Agreement was essentially a relocation/modification contract whereby Black & Veatch was responsible for refurbishment of equipment from the Daggett, California facility based on the recommendations of third-party inspectors. Black & Veatch alleges that it was initially the Debtor's responsibility to designate what parts of the Daggett plant needed to be refurbished and what parts needed replacing, but Black & Veatch asserts that it was forced to take on that responsibility because of the Debtor's slow performance. Additionally, a major component of the Gasification Agreement was based on the Texaco/Debtor PIP that was specifically developed for use in the Debtor's coke-to-fertilizer plant. Black & Veatch asserts that it was required to rely on Texaco's PIP as adequate, and its responsibility was only to install the PIP as designed in the Coffeyville facility.

Timely completion of the Gasification Agreement was designated "of the essence" in the Gasification Agreement, and the time frame allowed for mechanical completion was designated with adequate allowance for inclement weather. Unfortunately, numerous events caused Black & Veatch to postpone the scheduled date for mechanical completion—events that Black & Veatch asserts were attributable to the Debtor. Pursuant to Article 5.1 of the Gasification Agreement, if Black & Veatch's performance was delayed, then it was required to give prompt written notice

and to diligently endeavor to mitigate and remedy the situation. The Gasification Agreement provided that any claim for an extension of the completion deadline had to be made within ten days after the occurrence, or else any request for an extension was waived. The Debtor alleges that on January 17, 2000, three months *after* the scheduled date for mechanical completion, Black & Veatch submitted the required paperwork for an extension requesting an additional 170 days to complete the project, based on events occurring in 1997 and 1998. Before submitting that paperwork, however, Black & Veatch submitted numerous change orders altering the scope of its work; these change orders were approved by the Debtor.

The Synloop Agreement required Black & Veatch to engineer, procure, and construct an ammonia synthesis loop project for the sum of $32,485,300. Like the Gasification Agreement, the Synloop Agreement required Black & Veatch to attain mechanical completion twenty-two months after December 12, 1997, or no later than October 11, 1999; to notify the Debtor in writing if it believed that the completion schedule would not be met; and to give written notice in the event of a delay within ten days of the occurrence or else a claim for additional time to complete the project was deemed waived. Article 15 of the Synloop Agreement also contemplated an extension of the mechanical completion date based on approved change orders.

Black & Veatch did not reach mechanical completion of the Synloop Agreement until February 15, 2000,[2] a delay that it

attributed to the Debtor/Texaco's deficient PIP, the scope of the Debtor's requested changes in the gasification plant, and to the delays associated with the completion of the Gasification Agreement. No written request for an extension of the project completion date was ever submitted.

Each of the three agreements contains an arbitration clause whereby the parties agreed that all claims, disputes, questions, and controversies arising out of the agreements were to be settled in accordance with the Construction Industry Rules of the American Arbitration Association. On December 18, 2001, the Debtor submitted its statement of claim and demand for arbitration before the American Arbitration Construction Panel in Kansas City, Missouri, alleging its entitlement to damages in excess of $32,000,000. Black & Veatch also filed a cross-demand for arbitration contending that it was entitled to an equitable adjustment of the contract price in the amount of $28,512,482. The arbitration proceeding advanced to the selection of a three-judge panel. On May 31, 2002, however, the Debtor filed its Chapter 11 bankruptcy and the arbitration proceedings were halted with the imposition of the automatic stay. The Court initially denied Black & Veatch's motion requesting relief from the automatic stay to continue arbitration (Documents Nos. 1386 and 2204), without prejudice to refiling. Subsequently, Black & Veatch timely submitted its proof of claim for $28,512,482, to which the Debtor objected, and re-filed its motion requesting relief from the automatic stay.

---

**2.** The Engineering Agreement, Gasification Agreement, and Synloop Agreement are fully performed and the only remaining issues regarding those contracts relate to the parties' rights and liabilities arising out of their completed performance. Accordingly, the contracts are non-executory. *See* Countryman, Vern, *Executory Contracts in Bankruptcy, Part*

*1*, 57 Minn. L.Rev. 439, 460 (1973) (providing that an executory contract is a contract under which the "obligations of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other.").

## II. DISCUSSION

Black & Veatch contends that both parties contractually agreed to binding arbitration to settle disputes arising out of the Engineering, Gasification, and Synloop Agreements. Arguing that the substance of the parties' dispute is singularly unsuited to the expertise (or lack thereof) of the bankruptcy court, Black & Veatch requests relief from the automatic stay to pursue arbitration, and argues that the Court should abstain from hearing a complex process engineering design and construction suit.[3] The Debtor argues against the resolution of its dispute with Black & Veatch through enforcement of the parties' arbitration agreement, asserting that to allow arbitration would impermissibly conflict with the underlying purposes and policies of the Bankruptcy Code inasmuch as the objection to Black & Veatch's proof of claim is a core proceeding and its resolution will have a "material impact" on the bankruptcy estate.

■ Generally, a court has little reason to ignore non-executory contractual arbitration clauses, and a court should give effect to a contractual arbitration term in the same manner as the court gives effect to any other non-executory contract in bankruptcy, especially considering the strong federal policy favoring arbitration. *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (instructing that the Arbitration Act establishes a federal policy favoring arbitration); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (stating that the Arbitration Act was designed to put arbitration agreements on the same footing as other contracts); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3rd Cir.1989)

(finding "no reason to make an exception for arbitration agreements to the general rule binding trustees to pre-petition non-executory contracts" when the trustee's rights and obligations are derivative of the debtor). Part of the codified Arbitration Act plainly states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

■ In fact, courts widely accept that the bankruptcy court must stay its own proceedings to allow arbitration to continue in non-core matters because allowing arbitration in non-core matters is unlikely to conflict with the underlying policies of the Bankruptcy Code. *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 165–66 (2nd Cir.2000) (stating that "bankruptcy courts generally must stay non-core proceedings in favor of arbitration" and finding that premise "in harmony with the general principles governing arbitration and bankruptcy law."), *cert. denied*, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001); *Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.)*, 118 F.3d 1056, 1066 (5th Cir.

---

3. Because the Court finds that cause exists to lift the automatic stay, the Court will not address Black & Veatch's arguments for permissive abstention.

1997) (noting that the Third Circuit's ruling in *Hays* requiring the bankruptcy court to enforce an arbitration clause in a non-core matter "makes eminent sense" and "has been universally accepted"). Thus, the policy considerations favoring the enforcement of contractual arbitration clauses in non-core proceedings include the mandate to enforce a valid pre-petition, non-executory contract, the presence of a strong federal policy favoring arbitration, and the absence of a serious conflict with the objectives of the Bankruptcy Code.

 Regarding core matters, however, a party's right to enforce an arbitration agreement is not as strong. While there is no bright-line rule that arbitration of core bankruptcy proceedings is irreconcilable with the Bankruptcy Code, a court has discretion to refuse enforcement of an arbitration clause based on the "underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code." *National Gypsum Co.*, 118 F.3d at 1067. In core proceedings, the court should determine whether the Arbitration Act's mandate is overridden by a contrary Congressional command, which is discernible from the statutory text, legislative history, or "from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 226–27, 107 S.Ct. 2332. The Fifth Circuit, in *National Gypsum Co.*, 118 F.3d at 1069, opined that when a core proceeding involved the adjudication of federal bankruptcy rights—"wholly divorced from inherited contractual claims"—then the importance of the Bankruptcy Code is paramount and any action is arguably beyond the coverage of an arbitration agreement. Bankruptcy rights divorced from the inherited contractual claims would in-

clude the special powers granted to a trustee under Chapter 5 of the Bankruptcy Code. *See e.g., Hays & Co.*, 885 F.2d at 1155 (finding that a trustee's cause of action under 11 U.S.C. § 544(b) was not derivative of the debtor and not subject to an arbitration agreement).

On the other hand, enforcement of an arbitration clause arising out of litigation involving solely pre-petition contracts that are only core inasmuch as they involve seeking relief from the automatic stay to proceed to arbitration and determining the allowed amount of a proof of claim under applicable state law have been found not to conflict with the underlying provisions of the Bankruptcy Code. *In re Statewide Realty Co.*, 159 B.R. 719, 722, 724 (Bankr. D.N.J.1993). *See also United States Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2nd Cir.1999) (stating that even in core proceedings, in which the interest of the bankruptcy court is greater, the bankruptcy court nonetheless might lack discretion to refuse a stay in favor of arbitration), *cert. denied*, 529 U.S. 1038, 120 S.Ct. 1532, 146 L.Ed.2d 347 (2000).

 In this matter, Black & Veatch's motion for relief from the automatic stay and the Debtor's objection to Black & Veatch's proof of claim are core proceedings in bankruptcy. 28 U.S.C. § 157(b)(2)(B), and (G). The Court is convinced, however, that the enforcement of the parties' arbitration agreement in bankruptcy is not overridden by a contrary Congressional command that is discernible from the applicable sections of the Bankruptcy Code, its legislative history, or from an inherent conflict between the parties' arbitration agreement and the underlying purposes of the Bankruptcy Code; rather, the Court is constrained to follow the dictate in 9 U.S.C. § 3 and enforce the non-

executory arbitration agreement as written.[4]

Several factors support this conclusion.

First, pursuant to the forum selection clauses of the three agreements, adjudication of the underlying dispute involves rights arising under the laws of the State of Kansas—not rights arising under the Bankruptcy Code. Second, Black & Veatch is asking the Court to enforce a non-executory, pre-petition contract, which Courts generally enforce according to the contract's express terms. *Hays & Co.*, 885 F.2d at 1153 ("We see no reason to make an exception for arbitration agreements to the general rule binding trustees to pre-petition non-executory contracts"). Third, a strong federal policy exists, embodied in the Arbitration Act, favoring the enforcement of arbitration agreements. 9 U.S.C. § 3; *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Fourth, while Black & Veatch's motion for relief from the automatic stay and the Debtor's objection to Black & Veatch's proof of claim are core proceedings, the issues raised in those contested matters involve mostly contractual and state law claims which are divorced from the substantive rights granted by the Bankruptcy Code.

Fifth, the Court is not convinced that a determination of Black & Veatch's claim in bankruptcy, with the appellate process, is any more efficient than the parties' agreement to have binding arbitration. In fact, the arbitration clause envisions the arbitration hearing to be conducted within sixty days after selection of the arbitrator—

an event that transpired pre-petition—and that the arbitrator would render a decision within twenty days after the conclusion of the hearing. While the Court is sympathetic to the Debtor's concerns that the arbitration panel is not required to state what law it applied (if any) or to enunciate how it reached its decision, the Debtor is a sophisticated party that entered agreements negotiated at arms length with Black & Veatch and the Debtor should be bound by its covenants in a non-executory contract.

Sixth, the Court is not convinced that resolution of Black & Veatch's claim in arbitration will have any more of a "material impact" on the distribution to unsecured creditors in the Debtor's confirmed plan than if the Court retained jurisdiction. Theoretically, the decision reached by the arbitration panel should be the same as that reached by the Court, and as discussed *supra*, the damage resulting from a delay in reaching a decision through arbitration is not likely any greater than if the parties' claims were adjudicated by the Court.

Seventh, the Court is unconvinced by the Debtor's pleas that arbitration should not be allowed because it would require the bankruptcy estate to devote significant resources to challenge Black & Veatch's claim outside of bankruptcy. The Court does not believe that the strain on the Debtor's resources would be materially greater utilizing the contractual arbitration procedures than if the Court had ordered the matter to continue in bankruptcy as an adversary proceeding.[5] Furthermore, the

---

4. The Court notes that there are a panoply of cases dealing with the intersection of bankruptcy proceedings and arbitration agreements, often reaching contrary outcomes. *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865, 867–68 (Bankr.E.D.Tex.2001) (cataloging cases). Each case, however, turns on its particular facts and on the exercise of the bankruptcy court's discretion; thus, an in-depth analysis of analogous cases is of little value to the matter presently before the Court.

5. Had this matter continued, the Court would have likely converted the Debtor's objection to Black & Veatch's proof of claim into an

Debtor initiated the arbitration proceedings by demanding arbitration of its $32,000,000 claim against Black & Veatch in the first instance, so it should not be heard to complain now if that wish is granted. Hopefully, all claims between the parties can be resolved in a single arbitration proceeding.

Finally, the Court recognizes the need to promote centralized resolution of bankruptcy claims, and the need to protect creditors and the reorganizing Debtor from piecemeal litigation. These policy considerations in this case, however, are simply insufficient to create an inherent conflict between the Bankruptcy Code and the Arbitration Act. The policies of centralized resolution of claims and a generalized prohibition against piecemeal litigation are present in any core bankruptcy proceeding, and if the statements in *Hays, National Gypsum,* and *United States Lines*— that a core proceeding might be stayed in favor of arbitration—are to have any effect then these weaker policies underlying the Bankruptcy Code must yield to the stronger federal policy favoring the enforcement of valid arbitration agreements. As discussed, the delay, expense, and effort required by the parties to arbitrate their dispute are not materially different than if the matter would be allowed to continue in the bankruptcy court, and theoretically, each forum should reach the same result. Any impact on the Bankruptcy Code's policies of centralized claim resolution and prohibition of piecemeal litigation is *de minimis.*

The Court recognizes that parties other than the Debtor may have a stake in the outcome of its dispute with Black & Veatch, as evidenced by the Official Committee of Bondholders' vigorous opposition to arbitration. Under the circumstances of this particular case, however, the Court does not find that the interest of non-debtor parties in the outcome of the litigation is sufficient for the Court to abrogate a portion of a valid, pre-petition, non-executory contract.

For the abovementioned reasons, "cause" exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay of § 362(a). *See* HR Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6300 (providing that "cause" is not specifically defined in the Bankruptcy Code, but "a desire to permit an action to proceed to completion in another tribunal may provide ... cause."); S.Rep. No. 989, 95th Cong. 2nd Sess. 52 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838 (providing that "cause" may also include "the lack of any connection with or inference with the pending bankruptcy case."). *See also Wiley v. Hartzler (In re Wiley),* 288 B.R. 818, 821 (8th Cir. BAP 2003) (stating that the court and the parties may find that allowing proceedings to continue in their place of origin, thereby allowing the parties the benefit of their chosen forum, may be more appropriate when doing so is without prejudice to the bankruptcy estate).

## III. CONCLUSION

The Court finds that cause exists to lift the automatic stay and to allow the Debtor to adjudicate its dispute with Black & Veatch pursuant to the parties' pre-petition arbitration agreement. The Court will stay all further proceedings related to Black & Veatch's proof of claim pending a final determination by the arbitration panel.

This opinion constitutes the Court's findings of fact and conclusions of law. A

adversary proceeding. Fed. R. Bankr.P. 9014(c).

separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.