In re ERIE POWER TECHNOLOGIES, INC., Debtor.

Erie Power Technologies, Inc., Movant,

v.

Ref–Chem, L.P., Respondent.

No. 03–12126.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 22, 2004.

Keith E. Whitson, Pittsburgh, PA, for Debtor.

W. Patrick Delaney, Erie, PA, Special Counsel for Debtor.

Tye C. Hancock, Houston, TX, for Ref–Chem, L.P.

Kurt L. Sundberg, Erie, PA, Local Counsel for Ref–Chem, L.P.

Lawrence C. Bolla, Erie, PA, for Official Committee of Unsecured Creditors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

On August 27, 2003, Erie Power Technologies, Inc. ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code. Ref–Chem, L.P. ("Ref–Chem") is a construction company with which the Debtor had contracted prior to Debtor's bankruptcy filing. Ref–Chem has filed a Proof of Claim in this case and Debtor has filed an Objection to the Proof of Claim. In response to Debtor's Objection to Proof of Claim, Ref–Chem has filed its Opposition and Motion to Abate the Debtor's Objection Pending Arbitration. Also, before the Court is DEBTOR'S MOTION TO HOLD REF–CHEM, L.P. IN CONTEMPT FOR THE WILLFUL VIOLATION OF THE AUTOMATIC STAY ("Motion"). A hearing was held on June 28, 2004 at which the Court heard the arguments of counsel and set a briefing schedule. We have received and reviewed the briefs of the parties and find that all of the parties should proceed with the pending arbitration to resolve the underlying issues.

### Factual Background

Debtor is a global supplier of technology solutions and services to the power industry and selected energy-intensive industries. In 2001, Bastrop Energy Partners, L.P. ("Bastrop") contracted with Duke/Flour Daniel ("DFD") to construct a power facility in Bastrop, Texas ("Bastrop Project"). DFD, in turn, subcontracted with Debtor to furnish and install various portions of the power facility, including two (2) Heat Recovery Steam Generators ("HRSGs"). In connection with the Bastrop Project, Debtor obtained a Payment and Performance Bond in the amount of $6,520,000 from Fidelity & Guaranty Insurance Underwriters, Inc. ("Fidelity").

On or about April 20, 2001, Debtor entered into a Field Construction Contract with Ref–Chem for the original amount of

$5,036,459 for the installation of the two (2) HRSGs ("Subcontract").

A dispute arose between Debtor and Ref–Chem over the scope of the work and amount due under the Subcontract. Ref–Chem filed suit against the Debtor in the Texas State Courts (the "Lawsuit"). The Lawsuit included claims for breach of contract and fraud.

Debtor removed the Lawsuit from the Texas State Court to the United States District Court for the Western District of Texas ("District Court") and then filed a motion to compel arbitration and to stay further proceedings in the Lawsuit pending completion of arbitration. The District Court granted Debtor's motion to compel arbitration.

Debtor then initiated the arbitration action against Ref–Chem. Ref–Chem filed an Answer and Counterclaim and made a Demand Against Fidelity. Fidelity was joined in the arbitration proceeding. The arbitration is currently pending as the matter known as *The American Arbitration Association: Aalborg Industries, Inc. v. Ref–Chem Corporation v. Aalborg Industries, Inc. and Fidelity and Guaranty Insurance Underwriters, Inc.*, Case No. 55 110 00061 02 PJL (the "Arbitration").

Ref–Chem also filed with the Bastrop County, Texas Court an Affidavit of Claim for a Mechanic's Lien in the amount of $3,532,826 on the Bastrop Project.

Debtor posits that DFD required it to remove Ref–Chem's Mechanic's Lien and in order to do so, Debtor obtained a surety bond from Fidelity to indemnify DFD against the lien ("Release Bond"). Debtor asserts that it was required to post collateral to secure the Release Bond and that after deduction of the $30,598 premium for the Release Bond, a balance of $556,940 of the Debtor's funds is held as collateral by Fidelity (the "Bond Escrow"). Debtor fur-

ther asserts that when its former parent, Aalborg–Denmark, sold the Debtor in September, 2002 to DaeKyung Machinery & Engineering Co., Ltd. ("DKME"), Debtor was required to place $3,889,020 of its funds in escrow (the "Calfee Escrow") and that the $3,889,020 in escrow, along with $556,940 paid to secure the Release Bond, are Debtor's assets that will be used to indemnify Fidelity for any judgment that Ref–Chem might achieve in the Arbitration.

A hearing on the Arbitration was scheduled to begin in September, 2003. As a result of Debtor's bankruptcy filing, the Arbitration hearing was initially stayed by the American Arbitration Association ("AAA"). The AAA advised the parties by letter dated September 16, 2003 of its position:

This will acknowledge receipt of a copy of a petition in a bankruptcy proceeding filed in the Court by Aalborg Industries, Inc.

Since the filing of such a petition acts to automatically stay the instant arbitration proceedings, the Association is suspending administration of the above matter at this time.

We ask the parties to notify the Association on or before September 26, 2003, if you wish to hold this matter in abeyance. Absent a response on or before September 26, 2003, we will close our files.

The parties are requested to keep the AAA advised of further developments in the presently pending court proceedings.

Ref–Chem advised the AAA of its position that its claims against Fidelity should proceed. Debtor took the position that the automatic stay provided by § 362 of the Bankruptcy Code applied to all parties to the Arbitration. The Arbitration panel considered the issue of "whether a bankruptcy case which stays the hearing of

claims in arbitration against the Claimant is a bar to the case proceeding against the Claimant's surety, when the surety has been properly joined in the arbitration and is not a party to the bankruptcy of the Claimant." In a ruling dated February 24, 2004, the Arbitration panel stated that "[i]n the unanimous view of the arbitrators, the answer is 'No,' and this matter is ripe for hearing."

Debtor's Motion followed. Debtor asserts that the Arbitration must be stayed as to all parties including a third party, Fidelity. According to the Debtor, a judgment against Fidelity in the Arbitration will immediately cause a dissipation of Debtor's assets by loss of the Bond Escrow and may also place the Calfee Escrow at risk. Debtor asserts that there exists sufficient "unusual circumstances" for the Court to stay the entire Arbitration proceeding. Finally, Debtor asserts that agreement to arbitrate disputes between the parties should not be enforced and that Ref–Chem's claim should be adjudicated through the claims resolution process in this Court.

Ref–Chem asserts that the automatic stay does not apply to its claim against the third party, Fidelity, and that Debtor's Objection to Ref–Chem's Proof of Claim cannot circumvent Ref–Chem's contractual right to arbitrate claims related to the Bastrop Project.

*Discussion*

The underlying contract that gives rise to the pending issues provides:

> Disputes between the Contractor [Debtor] and Subcontractor [Ref–Chem] arising out of or relating to the Subcontract shall be resolved exclusively and finally by binding arbitration conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . .

■ Thus, in the absence of bankruptcy, there is a valid agreement that requires the parties to arbitrate their contract disputes. Arbitration is favored in our judicial system. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1153–54 (3d Cir.1989) *citing Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985).

■ The Court of Appeals for the Third Circuit has determined that the Bankruptcy Court has no authority to deny enforcement of an arbitration clause in a non-core proceeding. *Hays & Co.,* 885 F.2d at 1155–1157 (3d Cir.1989).

Debtor posits that its bankruptcy filing and the filing of a proof of claim by Ref–Chem renders the underlying action a claims resolution issue that is a core matter which must be adjudicated in the Bankruptcy Court.

■ Where a proceeding is a core proceeding, the Bankruptcy Court has discretion to either enforce or deny enforcement of an arbitration clause. *In re Gandy,* 299 F.3d 489 (5th Cir.2002); *In re United States Lines, Inc.,* 197 F.3d 631 (2d Cir.1999); *In re Farmland Ind., Inc.,* 309 B.R. 14 (Bankr.W.D.Mo.2004); *In re Phico Group, Inc.,* 304 B.R. 170 (Bankr.M.D.Pa. 2003); *In re Statewide Realty Co.,* 159 B.R. 719 (Bankr.D.N.J.1993).

> [T]he aspects of the Bankruptcy Reform Act of 1978 that caused it to conflict with the Arbitration Act are not present in this case with respect to the Bankruptcy Code as amended in 1984. Equally as important, given the recent Supreme Court cases concerning the Arbitration Act, we can no longer subscribe to a hierarchy of congressional concerns that

places the bankruptcy law in a position of superiority over that Act. The message we get from these recent cases is that we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code.

*Hays,* 885 F.2d at 1160–61.

 Accordingly, we must engage in a balancing test to determine whether the arbitration should proceed and the objection to claim be held in abeyance pending conclusion of the arbitration proceeding.

 In this case, it was the Debtor who elected to proceed with arbitration and who initiated arbitration to resolve the underlying issues. The Arbitration panel was set to begin hearings on the matter when the bankruptcy was filed. All of the underlying causes of action arise out of the contract between the parties. There are no specific causes of action in the underlying litigation which are created by the Bankruptcy Code and there has been no demonstrated conflict between enforcement of the Arbitration provisions of the contract and the purposes of the Bankruptcy Code. The parties will receive a prompt hearing in either forum.

This is not a mass tort situation where thousands of claims are pending against the Debtor in various locations throughout the country which would be impossible to defend, or a situation where special expertise might be required for resolution of the claims. Rather, there is one piece of litigation located in an area where Debtor performed work on a project which involves Debtor, Debtor's subcontractor and Debtor's bonding company. By allowing the Arbitration to proceed, claims amongst all of the parties can be resolved in one forum. Debtor will be able to provide an adequate defense in the Arbitration. To the extent that Fidelity has collateral to secure its position, that collateral would be available for Fidelity in either forum.

We can find no conflict between allowing the Arbitration to proceed and the basic bankruptcy purposes of centralized resolution of bankruptcy claims, protection of creditors and the avoidance of piecemeal litigation. The Arbitration will cause no material impact in the bankruptcy case that is sufficient to override the federal policy favoring arbitration.

Accordingly, we will grant Ref–Chem relief from the automatic stay to pursue its claims against Fidelity and the Debtor in the Arbitration proceeding and continue generally any further proceedings on Debtor's objection to Ref–Chem's claim pending completion of the Arbitration. An appropriate Order will be entered.