FILED

MAR 08 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   AZ-12-1241-KlPaMk |
| | ) | |
| MARSHALL L. RADER and BARBARA J. RADER, | ) | Bk. No.   10-14477-RTB |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM E. PIERCE, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| ROBERT G. CARSON, Trustee of the R & S Carson Family Trust; SANDRA J. CARSON, Trustee of the R & S Carson Family Trust, | ) ) ) ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and submitted on January 25, 2013
at Phoenix, Arizona

Filed - March 8, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum Sr., Bankruptcy Judge, Presiding
_____

Appearances:     Terry A. Dake, Esq., of Terry A. Dake, Ltd., argued for Appellant; Brian Y. Furuya, Esq., of Aspey Watkins & Diesel, PLLC, argued for Appellees.
_____

Before:  KLEIN,[*] PAPPAS, and MARKELL, Bankruptcy Judges.

_____

     [*] Hon. Sandra R. Klein, United States Bankruptcy Judge for the Central District of California, sitting by designation.

KLEIN, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] trustee, William E. Pierce ("Trustee"), appeals from an order overruling his objection to a claim filed by Robert G. Carson and Sandra J. Carson on behalf of The R & S Carson Family Trust ("Carsons"). We AFFIRM.

## FACTS

Marshall and Barbara Rader ("Debtors") filed a chapter 13 bankruptcy petition on May 12, 2010. A few months later, the case was converted to a chapter 7, and Trustee was appointed as the chapter 7 trustee.

On August 12, 2010, the Carsons filed a "Motion for Order Approving Stipulation of Parties Regarding Relief from Automatic Stay" ("Motion"). The Motion indicated that the Carsons, Debtors, and Trustee agreed that the automatic stay should be terminated regarding a parcel of real property located in Valle-Williams, Coconino County, Arizona ("Property"). Attached to the Motion was a stipulation ("Stipulation"), which stated that the Carsons had a security interest in the Property and that Debtors were in default under their obligations to the Carsons. On September 9, 2010, the bankruptcy court entered an "Order Approving Stipulation Regarding Relief from Automatic Stay" ("Order").

On November 1, 2010, the Carsons timely filed a $739,100.61 proof of claim ("Claim"), which indicated that the debt was

_____

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

secured by a trust deed on the Property. The Claim stated that the value of the Property was $370,000. This valuation was supported by an appraisal, and was not challenged in the bankruptcy court nor is it challenged in this appeal. The Claim was bifurcated into a secured claim of $370,000 and an unsecured claim of $369,100.61.

On December 16, 2010, the Carsons purchased the Property for $370,000 at a non-judicial foreclosure sale. Debtors received a discharge on January 11, 2011.

On March 2, 2012, Trustee filed an objection to the Claim ("Claim Objection"), which stated, in its entirety, that: "Said claimant asserts a lien on certain property of the debtor's [sic] estate and said claimant has or should have looked to said property for payment of the debt thereby secured. The trustee recommends that said claim be treated as: DISALLOWED." The Carsons filed a response to the Claim Objection on March 16, 2012. On April 20, 2012, the bankruptcy court heard and overruled the Claim Objection, reasoning that the Carsons could not have filed a state court deficiency action or an adversary proceeding without violating the discharge injunction. On May 1, 2012, the bankruptcy court entered an order overruling the Claim Objection and allowing the Carsons' $369,100.61 unsecured claim. Trustee timely filed a notice of appeal on May 4, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B). We have jurisdiction pursuant to 28 U.S.C. § 158(b).

-3-

**ISSUE**

Whether the bankruptcy court erred when it overruled Trustee's Claim Objection.

**STANDARD OF REVIEW**

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011). "De novo review is independent, with no deference given to the trial court's conclusion." Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012). Review under the clearly erroneous standard is "significantly deferential," with reversal requiring "a definite and firm conviction that a mistake has been committed." Id. Put another way, "[a] court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

**DISCUSSION**

Trustee asserts that the bankruptcy court should have disallowed the unsecured portion of the Carsons' Claim because they did not comply with Arizona Revised Statute ("A.R.S.") § 33-814, which establishes procedures for obtaining deficiency judgments after non-judicial foreclosure sales. According to Trustee, the automatic stay was not a bar to the Carsons pursuing

-4-

a deficiency judgment because the Order was sufficiently broad to allow the Carsons to file a state court action or an adversary proceeding.

Trustee also argues that the discharge injunction did not prohibit the Carsons from pursuing a deficiency action because: 1) Debtors would not have to be parties to any such action; 2) proceedings can be filed post-discharge that name Debtors as nominal parties without violating the discharge injunction; and 3) the Carsons could have filed a motion with the bankruptcy court to obtain leave to proceed.

The Carsons counter that pursuant to §§ 101(5) and 506, the bankruptcy court properly allowed their unsecured claim. According to the Carsons, requiring creditors to file separate actions to obtain deficiencies would be contrary to the law, burdensome, and a waste of judicial resources because: 1) the automatic stay prevented them from filing a deficiency action as required by state law; 2) the Order did not allow them to file a separate deficiency action; and 3) the discharge injunction prohibited them from pursuing any action against Debtors.

**A.   Arizona Revised Statute § 33-814**

A.R.S. § 33-814 sets forth procedures pursuant to which a creditor can obtain a deficiency judgment after a non-judicial foreclosure sale.  A.R.S. § 33-814(A) provides, in relevant part, that "within ninety days after the date of sale of trust property under a trust deed pursuant to § 33-807,[2] an action may be

---

[2] A.R.S. § 33-807 outlines a trustee's authority under a deed of trust.  "[I]n Arizona, non-judicial foreclosure sales,
(continued...)

-5-

maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security . . . ." If no deficiency action is filed within the ninety-day period, "the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist." A.R.S. § 33-814(D).

**B.    Preemption**

Based on the facts of this case, we find that A.R.S. § 33-814 is preempted by the Bankruptcy Code. The preemption doctrine, which implements the Supremacy Clause of the Constitution,[3] "invalidate[s] state statutes to the extent they are inconsistent with, or contrary to, the purposes or objectives of federal law." Sticka v. Applebaum (In re Applebaum), 422 B.R. 684, 688 (9th Cir. BAP 2009) (citing Perez v. Campbell, 402 U.S. 637, 652 (1971)). Congress may preempt state law "either expressly-through clear statutory language-or implicitly." Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159, 1164 (9th Cir. 2008). Nothing in the Bankruptcy Code explicitly preempts

---

(...continued)
or trustees' sales," are governed by A.R.S. §§ 33-801 to 33-821. Hogan v. Wash. Mut. Bank, N.A., 277 P.3d 781, 782-83 (Ariz. 2012). "When parties execute a deed of trust and the debtor thereafter defaults, A.R.S. § 33-807 empowers the trustee to sell the real property securing the underlying note through a non-judicial sale." Id.

[3] The Supremacy Clause provides that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

statutes such as A.R.S. § 33-814. Thus, the issue is whether A.R.S. § 33-814 is implicitly preempted.

"There are two types of implied preemption: field preemption and conflict preemption." Id. Field preemption is present when federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Conflict preemption is present "to the extent that federal law actually conflicts with any state law." Whistler Invs., 539 F.3d at 1164.

Field preemption is inapplicable in this case. Section 502(b)(1) states that a court "shall allow" a claim unless the claim is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." By explicitly incorporating other "applicable law," § 502(b)(1) demonstrates that Congress did not intend the Bankruptcy Code thoroughly to occupy the field related to the claims allowance process. Cf. Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985) (stating that preemption is inferred if "Congress 'left no room' for supplementary state regulation" (quoting Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230 (1947))).

"Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." Whistler Invs., 539 F.3d at 1164. As analyzed below, we find that both types of conflict preemption are present in this case.

-7-

First, the automatic stay and the discharge injunction—two cornerstones of federal bankruptcy law—made it impossible for the Carsons to comply with A.R.S. § 33-814. Second, A.R.S. § 33-814's requirement that the Carsons file an action as a prerequisite to recovering a deficiency poses an obstacle to Congress' objectives in creating the Bankruptcy Code's comprehensive, centralized claims resolution process and its framework for determining the validity and secured status of claims.

### 1. It was Impossible for the Carsons to Comply with Federal and State Law

#### a. Automatic Stay

When Debtors filed bankruptcy on May 12, 2010, an automatic stay immediately went into effect that prohibited, among other actions, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case." § 362(a)(1); Dunbar v. Contractors' State License Bd. of Cal. (In re Dunbar), 235 B.R. 465, 470 (9th Cir. BAP 1999) ("[The automatic stay] is designed to immediately maintain the status quo by precluding and nullifying postpetition actions, whether judicial or nonjudicial, in nonbankruptcy forums against the debtor and property of the estate."). "The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1214 (9th Cir. 2002).

It is undisputed that the automatic stay was in effect between December 16, 2010 (the date of the foreclosure sale) and

-8-

January 11, 2011 (the date Debtors received a discharge). The Carsons would have violated the automatic stay if they had filed a deficiency action during that period of time, unless the Order modified the stay not only to allow the Carsons to proceed with the foreclosure sale, but also to initiate a deficiency action.

The Order was silent regarding whether the Carsons could pursue a deficiency judgment. The Order could be interpreted as authorizing the Carsons to file a deficiency action because it provided that they could take "any and all steps pursuant to their loan and security agreements" to realize and recover on the indebtedness owed by Debtors. The Order could also be interpreted as only authorizing the Carsons to pursue recovery by way of a foreclosure sale, because it provided that the Carsons could schedule and conduct "a non-judicial foreclosure sale of the real property under the deed of trust," but did not mention filing a deficiency action.

Because the Order is subject to more than one reasonable interpretation, it is ambiguous. See Kester v. Campbell, 652 F.2d 13, 16 (9th Cir. 1981) ("The language of the [executive] order is sufficiently ambiguous to permit several reasonable interpretations . . . ."); Univ. Realty & Dev. Co. v. Omid-Gaf, Inc., 508 P.2d 747, 750 (Ariz. Ct. App. 1973) ("Language is ambiguous when it can reasonably be construed in more than one sense . . . ."). Therefore, we can refer to the "entire record for determining what was decided." Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 936 (4th Cir. 1997) (internal quotation marks omitted); see also In re Wachovia Preferred Sec. & Bond/Notes Litig., No. 09 Civ. 6351 RJS, 2012 WL 2589230, at *1

(S.D.N.Y. Jan. 3, 2012) (slip opinion) (incorporating by reference definitions in a stipulation into an order); Solutia, Inc. v. McWane, Inc., 726 F. Supp. 2d 1316, 1329 (N.D. Ala. 2010) (considering a stipulation, briefs, and a declaration to interpret an ambiguous order).

As the Carsons argue persuasively, the Stipulation, on which the Order is based, states that the Carsons would "seek foreclosure and liquidation of the . . . Real Property," while the Arizona statute at issue provides that deficiency actions are against persons. A.R.S. § 33-814(A) ("[A]n action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security . . . .").

Trustee's assertion that any ambiguity must be construed against the Carsons is meritless for two reasons. First, Trustee was represented by counsel and the Order was based on the Stipulation, which Trustee signed. Thus, the general rule that ambiguities are interpreted against the drafter is limited in this case "by the degree of sophistication of the contracting parties [and] the degree to which the contract was negotiated." New Jersey v. Merrill Lynch & Co., Inc., 640 F.3d 545, 550 (3d Cir. 2011); see also Terra Int'l., Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997) (declining to construe an ambiguous clause in a contract against the drafter "due to the relatively equal bargaining strengths" of the parties and the fact that the non-drafting party was represented by "sophisticated legal counsel" during the formation of the agreement).

Second, "the terms of an order lifting the automatic stay are strictly construed." Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 935 (9th Cir. 2009) (internal quotation marks omitted); InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 328 F. Supp. 2d 522, 528-29 (M.D. Pa. 2004) ("It is axiomatic that, due to the presumptively expansive scope of the automatic stay, relief from the stay must be narrowly construed."); Bank of Am. Nat'l Trust & Sav. Ass'n v. Va. Hill Partners I (In re Va. Hill Partners I), 110 B.R. 84, 87 (Bankr. N.D. Ga. 1989) ("[U]nless the stay relief order clearly provides otherwise, the determination and allowance of claims, deficiency or otherwise, against the debtor or its estate in the pending bankruptcy case remain within the exclusive jurisdiction of the bankruptcy court.").

Trustee's reliance on In re Tyler, 166 B.R. 21 (Bankr. W.D.N.Y 1994) and InterBusiness, 328 F. Supp. 2d 522, to support his position that the Carsons were required to file a state court action to obtain a deficiency judgment is unavailing. Both Tyler and InterBusiness involved judicial foreclosure statutes that required creditors to file state court actions before foreclosing on real property. Any deficiency actions in those cases would have necessarily been part of the state court foreclosure proceeding. InterBusiness, 328 F. Supp. 2d at 527 ("Petitions to fix value are filed as part of the foreclosure action itself, as a simple, supplemental proceeding in the existing case."); In re Tyler, 166 B.R. at 25 (stating that a party seeking a deficiency judgment in New York must file a motion within the mortgage foreclosure proceeding).

-11-

The courts in Tyler and InterBusiness considered the interrelationship between the foreclosure and deficiency actions to be an important factor in interpreting the relief from stay orders. InterBusiness, 328 F. Supp. 2d at 527; In re Tyler, 166 B.R. at 25 (stating that when it grants relief from stay to allow a party to proceed with foreclosure proceedings, "it is the Court's expectation that it has modified or terminated the stay for the completion of all related state court mortgage foreclosure proceedings, including the establishment of any deficiency judgment"). In contrast, the non-judicial foreclosure procedure authorized by A.R.S. § 33-814 did not require the Carsons to file a state court action before foreclosing on the Property. If the Carsons had pursued a deficiency judgment, they would have been required to initiate a separate state court lawsuit.

Trustee contends that even if the Order did not authorize the Carsons to file a deficiency action in state court, they could have filed an adversary proceeding to establish a deficiency. Trustee's argument is baseless. Neither the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, nor any other relevant authority requires a creditor to file an adversary proceeding to have an allowed claim.

A proof of claim "is deemed allowed" unless a party in interest objects. § 502(a). Upon objection, the dispute is considered a "contested matter," and "relief shall be requested by motion." Rule 9014(a); Garner v. Shier (In re Garner), 246 B.R. 617, 623 (9th Cir. BAP 2000) ("What matters about the procedural status of an objection to claim as a 'contested matter' is that Rule 9014 classifies the objection as a 'motion' for purposes of

Federal Rule of Civil Procedure 43(e)."). Further, Rule 7001, which defines matters that are adversary proceedings, does not mention claims allowance proceedings. Thus, contrary to Trustee's assertion, the Carsons did not need to file an adversary proceeding to have an allowed unsecured claim.

### b. Discharge Injunction

Debtors received a discharge less than one month after the Carsons foreclosed on the Property. Thus, the discharge injunction was in effect during most of the ninety-day period when Trustee asserts the Carsons should have complied with A.R.S. § 33-814.

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." "The § 524(a)(2) discharge injunction casts a wide shadow, with a large penumbra." Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 553 (9th Cir. BAP 2002). It applies "permanently with respect to every debt that is discharged," Garske v. Arcadia Fin., Ltd. (In re Garske), 287 B.R. 537, 542 (9th Cir. BAP 2002), and "enjoins any creditor's effort to collect a discharged debt as a personal liability of the debtor." Heilman v. Heilman (In re Heilman), 430 B.R. 213, 218 (9th Cir. BAP 2010).

Trustee argues that the discharge injunction did not prevent the Carsons from filing an action pursuant to A.R.S. § 33-814 because Debtors would not have to be parties to any deficiency action. Trustee cites In re Sun Ok Kim, 89 B.R. 116 (D. Haw.

-13-

1987) for the proposition that the bankruptcy estate, rather than Debtors, would have been the real party in interest.

In Sun Ok Kim the court was confronted with deciding which parties have standing to object to proofs of claims. Id. at 118. The court stated that usually only the trustee has such standing, but if the "trustee is formally notified and refuses to make an objection, either the debtor or the creditor may then ask the bankruptcy court to disallow the claim." Id. The fact that a trustee is normally the only party with standing to object to claims does not mean that the trustee is the only party who can be named as a defendant in a state court action or an adversary proceeding involving a claim. Trustee conflates standing to object to a claim with real party in interest with regard to the determination of claims. The former concept is, by its terms, narrower than Trustee contends and does not preclude a debtor's involvement in the "determination" of claims.

Additionally, Trustee's argument is undercut by the express language of A.R.S. § 33-814, which states that a deficiency action may be maintained "against any person" liable on the contract. It is undisputed that Debtors were the parties liable on the contract and that their liability was discharged on January 11, 2011. Any action filed by the Carsons after that date would have violated the discharge injunction because it would have been against Debtors personally on account of a discharged debt. In re Garske, 287 B.R. at 542 ("[A]n unsecured creditor has no right to any of the debtor's property post-discharge to satisfy a discharged debt.").

-14-

Alternatively, Trustee cites Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546 (9th Cir. BAP 2002) for the proposition that Debtors could have been named to a post-discharge lawsuit as "nominal parties" without violating the discharge injunction. In Munoz, the court was faced with determining whether the discharge injunction would be violated if a party sought to establish liability against a debtor solely for the purpose of pursuing payment from a third party. Id. at 549. The court in Munoz decided it would not, and stated that "[w]here the purpose of the action is to collect from a collateral source, such as insurance or the UEF [Uninsured Employers Fund], and the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons, no bankruptcy court order is necessary." Id. at 550. Here, there is no "collateral source" from which the Carsons could collect. If the Carsons had named Debtors in a post-discharge deficiency action, they would have been seeking to hold Debtors personally liable and therefore would not have named Debtors for "formal reasons" only.

Trustee also contends that the Carsons could have "done exactly what the creditor in Munoz did" and "filed a motion with the bankruptcy court to obtain leave to proceed." The court in Munoz distinguished between "construing" and "modifying" the discharge injunction. Id. at 553. The former is permissible because a court would merely be defining the parameters of the discharge injunction. Id. The latter, however, is not because the "discharge injunction is set in statutory concrete," which "constitutes a clear and valid legislative command that leaves no discretion in the court to modify the discharge injunction." Id.

-15-

at 550, 553. In Munoz, the court construed the discharge injunction and determined that a creditor seeking to collect from a collateral source would not violate it. Id. at 555. In contrast, if the Carsons had filed a motion for authorization to proceed with a deficiency action, they would have been impermissibly seeking to modify the discharge injunction to collect debt that was Debtors' personal liability.

In this case, compliance with the Bankruptcy Code and A.R.S. § 33-814 was impossible because the latter required the Carsons to file an action within ninety days of the foreclosure sale, but the automatic stay and the discharge injunction prevented them from doing so. See In re Perry, 425 B.R. 323, 397 (Bankr. S.D. Tex. 2010) (excusing compliance with state law deficiency action statute because compliance would violate the automatic stay); Integra Bank v. Sixta (In re Smith), 192 B.R. 397, 401 (Bankr. W.D. Pa. 1996) (finding creditor was not required to comply with state law, which required judgments to be satisfied within six months, because there was never an uninterrupted six-month period of time due to the debtor's many bankruptcy filings).

Stated differently, the automatic stay and the discharge injunction acted as a legal bar to the Carsons doing what A.R.S. § 33-814 required them to do. Thus, the Bankruptcy Code and A.R.S. § 33-814 are in conflict and the state law must yield. Perez, 402 U.S. at 652 (stating that a state law that is in conflict with federal law is invalid); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 230 (9th Cir. BAP 2008) ("[S]tate laws interfering with, or contrary to, federal law are preempted.").

-16-

As a result, the Carsons were not required to comply with A.R.S. § 33-814.

### 2. Compliance with A.R.S. § 33-814 Was an Obstacle to Accomplishing the Bankruptcy Code's Objectives

Requiring the Carsons to comply with A.R.S. § 33-814 would be contrary to the Bankruptcy Code's policy of providing a comprehensive, centralized forum for adjudication of claims. It would also interfere with the Bankruptcy Code's framework for determining the secured and unsecured status of claims.

### a. The Bankruptcy Code Provides a Comprehensive, Centralized Process for Adjudication of Claims

The "centralized resolution of bankruptcy claims" and "the avoidance of piecemeal litigation" are fundamental purposes of the Bankruptcy Code. Erie Power Techs., Inc. v. Ref-Chem, L.P. (In re Erie Power Techs., Inc.), 315 B.R. 41, 45 (Bankr. W.D. Pa. 2004); see also In re Tammarine, 405 B.R. 465, 467 (Bankr. N.D. Ohio 2009) ("The determination of claims against the bankruptcy estate is a central function of the bankruptcy courts."); In re Bargdill, 238 B.R. 711, 716 (Bankr. N.D. Ohio 1999) (noting that the claims allowance process facilitates the orderly distribution of the bankruptcy estate, which is one of the fundamental tenets of bankruptcy law).

"[T]he complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 et. seq., demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties" of creditors and debtors. MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 914 (9th Cir. 1996). A

-17-

bankruptcy court has "great authority over the allowance and disallowance of claims." Id. at 914 n.2.

The Bankruptcy Code defines a "claim" broadly as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." § 101(5). The breadth of this definition "is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 532 (9th Cir. 1998) (emphasis and internal quotation marks omitted).

A proof of claim that is executed and filed in accordance with the Rules "shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f); see also Garner v. Shier (In re Garner), 246 B.R. 617, 620 (9th Cir. BAP 2000) ("There is an evidentiary presumption that a correctly prepared proof of claim is valid as to liability and amount."). A claim "is deemed allowed, unless a party in interest . . . objects." § 502(a). Upon objection, a bankruptcy court

> shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

§ 502(b)(1).

A.R.S. § 33-814(A) provides that a judgment debtor may file an "application for determination of the fair market value of the real property." The court then determines the amount of the deficiency owed based on the sale price or what the court

-18-

determines the fair market value to be, whichever is greater. A.R.S. § 33-814(A). This procedure protects judgment debtors from unfairly high deficiency judgments based on trustee sales that garner inadequate amounts. MidFirst Bank v. Chase, 284 P.3d 877, 879 (Ariz. Ct. App. 2012) ("[The] primary purpose of [A.R.S. § 33-814(A)] is to prohibit a creditor from seeking a windfall by buying property at a trustee's sale for less than fair market value."). This same valuation evidence can and should be submitted to the bankruptcy court as part of the claims objection process. McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 512 (3d Cir. 1997) (finding that a valuation hearing in connection with a proof of claim was "precisely the same opportunity to be heard" that was available in a state court deficiency action and that "debtors should not be burdened by state court litigation when deficiency judgment actions impacting upon the debtor's estate can be settled in the bankruptcy forum").

Additionally, filing a deficiency action in state court would have been unnecessary and inefficient because it would have required another court's involvement in the adjudication of a core bankruptcy matter. 28 U.S.C. § 157(b)(2)(B) ("[A]llowance or disallowance of claims against the estate" is a "core proceeding."); Durkin v. Benedor Corp., (In re G.I. Indus., Inc.), 204 F.3d 1276, 1279-80 (9th Cir. 2000) ("The filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate,' a core proceeding under 28 U.S.C. § 157(b)(2).").

-19-

### b. The Bankruptcy Code Has a Framework for Determining the Secured and Unsecured Status of Claims

Requiring the Carsons to file a deficiency action pursuant to A.R.S. § 33-814 would also be contrary to the Bankruptcy Code's framework for determining the secured and unsecured status of claims. Section 506 provides that

> an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

§ 506(a)(1).

The Supreme Court has noted that pursuant to § 506(a), creditors can divide their claims into "secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 961 (1997); see also Enewally v. Wash. Mut. Bank (In re Enewally), 368 F.3d 1165, 1168-69 (9th Cir. 2004) ("Under the Bankruptcy Code, a secured loan may be separated into two distinct claims: a secured claim for an amount equal to the value of the security, and an unsecured claim for the difference, if any, between the amount of the loan and the value of the security.").

Although the unsecured portion of the Carsons' Claim was unliquidated and contingent before the foreclosure sale, that portion of their Claim was still valid. See § 101(5)(A) (defining a "claim" as a "right to payment, whether or not such right" is, among other things, unliquidated or contingent). After the foreclosure sale, the character of the Carsons' unsecured claim changed to liquidated and non-contingent. This change did not

-20-

affect the unsecured claim's validity. See In re Sneijder, 407 B.R. 46, 48 (Bankr. S.D.N.Y. 2009) ("The amount of [an] unsecured deficiency claim ordinarily is fixed when the collateral is sold at a foreclosure sale . . . ."). Nothing in § 101(5) or any other section of the Bankruptcy Code specifies or even implies that when the character of a claim changes—from unliquidated and contingent to liquidated and non-contingent—it affects the claim's validity. To the extent that A.R.S. § 33-814 mandates a different conclusion, it is at odds with the Bankruptcy Code and is, therefore, preempted. Elliott v. Bumb, 356 F.2d 749, 755 (9th Cir. 1966) (finding that a state law that would "thwart or obstruct the scheme of federal bankruptcy" was preempted by the bankruptcy law).

Contrary to Trustee's position, "[t]here is no requirement that the creditor first obtain a deficiency judgment in the non-bankruptcy forum as a prerequisite for bifurcating a claim into a secured and an unsecured part." In re Costello, 184 B.R. 166, 171 (Bankr. M.D. Fla. 1995). As partially secured, partially unsecured creditors, the Carsons timely "submit[ted] to the court . . . a proof of claim enumerating" the unsecured amount of their Claim. In re Bargdill, 238 B.R. 711, 716 (Bankr. N.D. Ohio 1999); see also In re VanDuyn, 374 B.R. 896, 897-98 (Bankr. M.D. Fla. 2007) (noting that creditor filed bifurcated proof of claim, and then determining whether the deficiency claim should be allowed under substantive bankruptcy law).

Trustee contends that the Carsons should have amended their Claim after the foreclosure sale, because "[c]reditors have a duty to amend their claims when they are aware of facts which render

-21-

their previously filed claims inaccurate." The Carsons could have amended their Claim to reflect that the secured portion was satisfied, but that portion of the Claim is not in dispute. There was also no reason for the Carsons to amend the unsecured portion of their Claim because they do not assert that they are entitled to more than the unsecured amount listed in their Claim. See In re Five Boroughs Mortg. Co., Inc., 176 B.R. 708, 713 (Bankr. E.D.N.Y. 1995) (noting that after a foreclosure sale, a secured creditor may return to the bankruptcy court to pursue that portion of its debt that was not satisfied by foreclosure of its collateral "by filing a claim against the bankruptcy estate. It may be the lender's original proof of claim. Or the lender may simply amend the proof of claim already filed to reflect the debt's correct amount, which is the debt less the foreclosure sale proceeds received by the lender.").

**CONCLUSION**

Trustee's Claim Objection was based solely on the Carsons' failure to obtain a deficiency judgment pursuant to A.R.S. § 33-814. In this case, state law is preempted by federal law because the automatic stay and the discharge injunction made it impossible for the Carsons to comply with A.R.S. § 33-814. A.R.S. § 33-814 is also preempted because requiring the Carsons to pursue a separate deficiency action, either in state court or in an adversary proceeding, would have been contrary to the Bankruptcy Code's orderly, efficient, and comprehensive claims administration process and its framework for determining the validity and secured status of claims. Therefore, the bankruptcy court's order overruling Trustee's Claim Objection is AFFIRMED.

-22-